[No. 36358.   Department Two.   January 23, 1964.]

THE STATE OF WASHINGTON, *Respondent,* v. HOWARD D. VINDHURST, *Appellant.*\*

*\*Reported in 388 P. (2d) 552.

*William J. Powell,* for appellant.

*John J. Lally* and *George A. Kain,* for respondent.

DONWORTH, J.—Howard D. Vindhurst appeals from a judgment and sentence entered after his conviction on one count charging him with the possession or control of narcotic drugs, in violation of RCW 69.33.230. In the same trial, the jury acquitted appellant of a similar charge.

On or about March 15, 1961, the Spokane County sheriff's office contacted Mrs. Lucille Twaddell to request her to act as an informant in the event that she should receive information concerning a quantity of narcotic drugs sought by the police. The narcotics had been taken in a local drugstore burglary a day or two before. Mrs. Twaddell's husband had been, for several years, a burglar and receiver of stolen goods and was then serving a sentence in the state penitentiary, so the officers considered her a likely person to be contacted by whoever had control of the narcotic drugs.

March 16, 1961, Joseph Bitz had a conversation with Mrs. Twaddell in which he inquired whether she had a list of prices she would be willing to pay for various narcotics. Mrs. Twadell informed the officers of her meeting with

Bitz. A price list was prepared by a deputy sheriff for use in a later meeting with Bitz. The list was picked up by him at Mrs. Twaddell's home early on the morning of March 17. That same morning, appellant called at Mrs. Twaddell's home and asked her to buy "the stuff." Appellant was told of her conversation with Bitz and he departed, saying that he would see Bitz. A meeting was arranged for that evening at the informant's home. Mrs. Twaddell informed the officers, who then placed a radio transmitter in her home for use in connection with the forthcoming meeting.

About 10 p.m. on the 17th, appellant and Bitz came to Mrs. Twaddell's home. A discussion followed concerning the purchase of narcotic drugs, and appellant produced a handwritten list of drugs.

Mrs. Twaddell testified as follows concerning the list produced:

"Mr. Kain: Just a moment. Who was present in your house at this time? A. Just the three of us: Joe Bitz, Vince Vindhurst and myself. Q. And what, if anything, did Mr. Bitz say to Mr. Vindhurst? Mr. Lutz: I object again, your Honor. It is hearsay. The Court: Objection overruled. A. He, Joe Bitz, told Vince Vindhurst to give me the list they had to see what I could use. Q. Then what happened? A. Vince Vindhurst had handed me the list of narcotics they had. . . . . Q. Was there any mention made of where these alleged drugs came from? A. Yes. Q. Who made the statement? A. Well I don't really know. Q. Was it either Mr. Vindhurst or Mr. Bitz? A. Mr. Bitz had mentioned it at one time and so had Vindhurst. There was quite a discussion of where they came from. Q. What did they say in the discussion of where it came from? A. There was a Chinaman who owned the drugstore and he had never been 'hit' before. The place had never been broken into before."

Thereafter, Bitz suggested that appellant procure a sample of the drugs. Appellant left the house and returned shortly with a bottle of pills. The police, who had overheard the conversation via the radio transmitter, entered the informant's house and arrested appellant and Bitz. The list of drugs and the bottle of pills were seized at that time

by the officers. (The pills, upon later analysis, were shown to contain Dilantin, a nonnarcotic drug.) Appellant and Bitz were taken to the county jail and booked. The officers then proceeded, with a search warrant, to search appellant's house, but discovered no drugs.

Sunday, March 19, 1961, the officers, after they had discovered that Dilantin was not a narcotic drug, had a conversation with appellant and Bitz while they were still in custody. The officers did not inform the two men that the bottle did not contain narcotic drugs. In exchange for the production of undiscovered narcotic drugs "that were on the street," the officers offered to return Bitz to the reformatory as a parole violator and not charge him with a new offense, and to allow appellant to plead guilty to a gross misdemeanor (possession of stolen goods). No agreement was then reached, so the proposal was explained again to the two men in the presence of their then attorney, Carl Maxey, who was called at their request. Mr. Maxey and his clients then conferred privately, and thereafter Mr. Maxey stated that they accepted the proposal "all the way around."

Mr. Allen, the deputy sheriff in charge of the case, testified that Mr. Maxey stated that he wanted appellant to be released from jail that day to recover the narcotics because he was the only one who could produce them. Mr. Maxey, in his testimony, stated: "I do not recall that statement," but did not specifically deny that he had made it.

Parenthetically, it should be stated that Bitz, who was being held because of having violated his parole, was not eligible to be released on bail.

Appellant was released on bail Monday morning, March 20, 1961. That same evening, Mr. Allen received a telephone call about 10:40 p.m. from Mr. Maxey. He then proceeded to the sheriff's office and then to Mr. Maxey's home. His testimony as to what occurred is as follows:

". . . Captain Shearer and one of our stenographers and I went to Carl Maxey's residence and looked over the narcotics, inventoried them, left Maxey's and returned to

the Sheriff's office where they were marked for evidence and locked up. Q. You say 'the narcotics' I take it you found some narcotics at Maxey's house, is that correct? A. Correct. Q. And were they in any kind of containers when you saw them? A. Two gunny sacks."

Mr. Maxey's testimony regarding this event was:

"Q. Calling your attention to the evening of Monday, the 20th day of March 1961, did you place a telephone call to me at that time? A. Yes I did, sir. Q. And did you inform me [the deputy prosecutor] that you had a supply of narcotics in your home you wished me to take off your hands? A. Yes. Q. Did you ask me to go to your home for the purpose of removing them from your home? A. Yes, I did, sir. Q. And after this phone call what happened? A. Mr. Allen and Captain O. K. Shearer came to my home and removed the quantity of drugs. Q. Was there a woman with them at that time? A. Yes, a stenographer whose name I do not know, from the Sheriff's office. Q. At that time did they remove the drugs from whatever kind of a container they were in? A. It was a gunny sack, as I recall. Q. And they inventoried them at that time? A. Yes they did. Q. Was this in your presence? A. It was in my living room in the presence of myself."

At this point the witness was asked where he had obtained the drugs that he delivered to the officers that evening. The objection of appellant's counsel, on the ground that the question involved the disclosure of a privileged communication between attorney and client, was sustained. (The question is the subject of appellant's fifth assignment of error.)

The officers at Mr. Maxey's house made an inventory of the bottles[1] received by them. The inventory was later typed and a copy was admitted as evidence at the trial of the present case.

Thereafter, appellant discharged Mr. Maxey as his attorney and pleaded *not* guilty to the gross misdemeanor charge of possession of stolen goods. At the hearing, the charge was dismissed by the state for lack of proof since

---

[1]Testimony at the trial by a narcotics expert showed that the bottles contained both narcotic and nonnarcotic drugs.

the druggist could not identify the bottle offered in evidence as having been taken from his store; whereupon, appellant was charged with two counts of having, in his possession or control, narcotic drugs, and was again arrested before he could leave the courtroom. The prosecution states he was thus arrested and charged because he did not abide by the "deal" made with the officers.

Appellant's trial on the two counts resulted in a conviction on the second count only.

The first 4 of appellant's 10 assignments of error present substantially the same issue of law. Appellant claims that it was prejudicial error to allow certain testimony to be admitted over his objection relating to an alleged burglary of a drugstore from which the narcotic drugs involved in this case were stolen. Also, error is claimed in the admission of a list of stolen drugs into evidence. Error is likewise predicated on the trial court's failure to grant a new trial when the prosecution made reference to the alleged burglary in its opening and closing statements to the jury.

We have said many times that it is grossly and erroneously prejudicial to permit the introduction of evidence of *unrelated* crimes in a criminal trial, unless the evidence comes within one of the recognized exceptions: (1) to show motive or intent, (2) the absence of accident or mistake, (3) a common scheme or plan, (4) identity, or (5) if the evidence is relevant to any material issue before the jury. *State v. Goebel,* 36 Wn. (2d) 367, 218 P. (2d) 300 (1950). Or, such evidence may be admitted if it tends to prove some essential ingredient of the crime charged in the information. *State v. Dinges,* 48 Wn. (2d) 152, 292 P. (2d) 361 (1956), and cases cited.

The question before this court is whether the evidence of the alleged burglary of the drugstore was so related to the charge of possession or control of narcotic drugs that it was admissible in this case.

The prosecution argues that the burglary is a related crime to the one with which appellant was charged. It is also contended by the state that the evidence of the bur-

glary is probative as tending to show that appellant had illegal possession or control of the narcotics.

Appellant claims that the state does not have to prove *illegal* possession because, where the charge is unlawful possession or control of narcotic drugs, the state, under the statute (RCW 69.33.230), has only to show possession or control. Therefore, in this case there was no need to show knowledge or intent because, after the state has shown possession, the burden of showing the existence of one or more statutory exceptions which would make the possession lawful, was on the defendant. (RCW 69.33.390) Appellant cites *State v. Boggs,* 57 Wn. (2d) 484, 358 P. (2d) 124 (1961), where we said that the state in such a prosecution need not prove that the defendant does *not* come within one of the statutory exceptions.

We agree with appellant that the state need not show that the possession of the narcotics was unlawful. However, the state's contention is equally true that the evidence of the burglary would be admissible if it tends to show an essential ingredient of the crime charged. Another way to state the issue is to say: is the evidence of the burglary relevant to the inquiry?

Appellant cites *State v. Dinges, supra,* to support his claim for reversal. There, in a trial on a charge of unlawful possession of narcotics, evidence of an alleged burglary of a grocery store near the place where the defendant was arrested was admitted. There was no showing that the alleged burglary in any way related to the crime charged.

In the present case, the burglary of the drugstore was, according to the state's evidence, as stated by appellant to Mrs. Twaddell, to be the source from which the narcotics came into his possession and control. Contrary to the statement made in appellant's brief, there was no evidence produced tending to show that he committed the burglary; nor was the evidence admitted for that purpose. Furthermore, the identity of the drugs on the list given Mrs. Twaddell by appellant as being narcotic drugs was a material issue. (The sample furnished to Mrs. Twaddell

by appellant turned out to be nonnarcotic.) The testimony of the drugstore owner, if believed by the jury, would tend to establish a connection between the narcotics stolen and those listed by appellant.

Therefore, the burglary of the drugstore (whoever committed it) was a related crime. The burglary of the grocery store in the *Dinges* case had nothing to do with the alleged unlawful possession or control of narcotic drugs (the charge on which the defendant in that case was being tried) and was an entirely unrelated crime. Accordingly, we hold that the decision in that case has no application in the case at bar.

There was no error in admitting the evidence of the burglary, which tended to prove an essential ingredient of the crime charged, namely possession or control.

Appellant next assigns error to the trial court's refusal to grant his motion for a mistrial because of misconduct by the prosecutor in asking an improper question referring to privileged matter. Following is the alleged objectionable question propounded to Mr. Maxey, appellant's former attorney:

"Where did you get the drugs you turned over to James Allen and Captain Shearer?"

The trial court sustained the objection of appellant's counsel because the question referred to a privileged transaction between attorney and client. Appellant then moved for a mistrial, which motion was denied.

The alleged objectionable question was asked of Mr. Maxey after he had testified as to his recollection of the proceedings at the jail when the "deal" was accepted. Appellant complains that the asking of the question was prejudicial, causing his counsel to object in the presence of the jury, and that the prosecutor should have known the question was objectionable.

Appellant cites *State v. Sullivan,* 60 Wn. (2d) 214, 217, 373 P. (2d) 474 (1962), and quotes from it as follows:

"Although a client's communications to his lawyer are not confidential or privileged when conveyed to counsel

for the purpose of public disclosure (*Green v. Fuller,* 159 Wash. 691, 294 Pac. 1037 (1930)), the gravity of the charge in the instant case, and the character of the evidence sought do not permit the inference that Mrs. Sullivan consulted defense counsel for the purpose of having him disclose the nature of her communication. In fact, the contrary appears.

"   . . .

"We believe it immaterial that the lawyer, when called upon to testify, was questioned concerning what he told others, but was not questioned concerning the confidential communication of his client to him. If the former must be *obviously* based upon the latter, the client's privilege prohibits the attorney from testifying.

"   . . .

"The prosecuting attorney could have had only one intent and purpose when he called defense counsel as a state witness: to prejudice the jury by giving it an opportunity to draw the inescapable inference that defendant had told defense counsel where she had buried her husband's remains. This was privileged under the statute, and it was prejudicial error to force Mr. Conroy to testify concerning it."

■ We do not think the *Sullivan* case controls this case. The mere asking of a question is not prejudicial error, unless, as shown in *Sullivan,* the facts and circumstances are such that the only inference to be drawn from the question refers to something highly prejudicial and privileged. In the present case, testimony of Detective Allen, already before the jury, afforded the jury the opportunity to draw an inference that appellant was to get the drugs. (See facts stated above.) While the sustaining of the objection is presumably proper (that question is not in issue), the question, itself, asked of Mr. Maxey, was not so prejudicial (if prejudicial at all) that it could not have been cured by an instruction by the trial court. No curative instruction was requested.[2] *State v. Bowman,* 57 Wn. (2d) 266, 356 P. (2d) 999 (1960).

---

[2] The trial court's general and cautionary instruction, No. 11, removed much of any prejudicial effect of the objection to the question. "Instruction No. 11. You are instructed that no inferences or presumptions against either side in this case can or should be indulged in by the jury because counsel for both of the parties may have made certain motions,

The asking of the question did not prejudice appellant, nor did it constitute misconduct by the prosecutor.

■ Appellant's sixth assignment of error is to the admission, over objection, of testimony concerning discussions which allegedly took place between appellant's then counsel, Mr. Maxey, and the officers, in appellant's presence, about the "deal." Appellant suggests that this was an offer of compromise and thus is a privileged matter. We cannot agree because offers to compromise criminal actions are not privileged. *State v. Bixby,* 27 Wn. (2d) 144, 170, 177 P. (2d) 689 (1947), and cases cited.

As his seventh assignment of error, appellant claims the trial court erred in admitting, over objection, exhibits 3 through 22A (bottles of narcotic drugs) and exhibit 25 (an inventory of drugs received by the officers at Mr. Maxey's house), for the reason that they were obtained by trick, artifice, and entrapment in violation of due process of law.

■ Appellant did not raise the issue of entrapment in the trial court, nor did he except to the failure of the court to instruct the jury on that issue. *State v. Harris,* 62 Wn. (2d) 858, 872, 385 P. (2d) 18 (1963). Therefore, this issue cannot be raised for the first time upon appeal. *Rutter v. Rutter,* 59 Wn. (2d) 781, 370 P. (2d) 862 (1962).

Appellant also claims that the use of the "deal" to induce appellant to turn over the above-mentioned exhibits (narcotics) to the officers amounts to a confession and should be considered under Rule of Pleading, Practice and Procedure 101.20W. This issue is also raised for the first time upon appeal and will not now be considered. *Rutter v. Rutter, supra.*

In support of his claim that the evidence above referred to was obtained by trick or artifice, appellant cites *Runnels v. United States,* 138 F. (2d) 346 (1943). That case cites as authority, and follows, *McNabb v. United States,* 318 U. S. 332, 87 L. Ed. 819, 63 S. Ct. 608 (1943). This court,

---

exceptions, or objections during the trial. It is not only the right but the duty of attorneys for both sides to do so if they deem it advisable or appropriate to make such motions or objections."

in many cases, has rejected the *McNabb* rule. *State v. Keating,* 61 Wn. (2d) 452, 455, 378 P. (2d) 703 (1963), and cases cited.

We find no merit in appellant's argument that he was denied due process of law by not being arraigned until Monday morning on the gross misdemeanor charge after his arrest early Saturday morning. Monday was the first judicial day following his arrest, and there is no showing that appellant did not have full protection of his constitutional rights during that period. In fact, at his request the officers called Mr. Maxey, his attorney, who conferred with him on Sunday. Appellant again cites *McNabb v. United States, supra,* which, as we have shown above, does not apply. There was no period of unreasonable detention, so the other cases cited by appellant do not apply.

As his eighth assignment of error, appellant claims that the trial court erred in submitting to the jury, over exception, instruction No. 5, and, instead, should have given appellant's proposed instruction No. 15. Appellant's exception was as follows:

"I take exception to the giving of the Court's Instruction No. 5 for the same reason. It does not fully state the definition of possession."

No exception was taken to the refusal to give proposed instruction No. 15.

In *State v. Harris, supra,* at page 857, we said:

". . . *only* exceptions which are made to instructions in the trial court may be considered on appeal. [citing cases] Furthermore, if the exception taken is too general to be effective in calling the trial court's attention to any error, there can be no review of the alleged error on appeal. [citing cases]"

In the present case, appellant's counsel did not point out to the court the objectionable part of the given instruction nor did he except to the failure to give his requested instruction. We shall not, therefore, consider the alleged errors in instruction in this appeal.

Appellant's final assignments of error concern the alleged error of the trial court in denying his motion for a directed verdict of acquittal and his motion in arrest of judgment or in the alternative for a new trial. Appellant's argument covering the assignments of error is mainly a challenge to the sufficiency of the evidence to sustain the conviction. We think there is sufficient evidence, even though circumstantial, to sustain the conviction. This point was very adequately discussed by the trial court in his ruling on appellant's motion for a directed verdict of acquittal. The trial court's considerations and reasoning are also applicable to these other motions. We, therefore, hold that the trial court properly denied appellant's post-trial motions.

We think that it should be stated in this opinion that appellant, at different stages of the proceedings, was represented by four different attorneys in the following order: (1) while in jail the day after his arrest by Mr. Maxey; (2) at his trial on the gross misdemeanor charge by a Seattle attorney; (3) at his trial on the possession of narcotics charge by a Spokane attorney who died shortly after the conviction; and (4) on this appeal by his counsel of record. This summary is included to show appellate counsel did not represent appellant prior to this appeal.

The judgment and sentence of the trial court is hereby affirmed.

FINLEY, WEAVER, HUNTER, and HAMILTON, JJ., concur.