[No. 38207.   Department One.   February 24, 1966.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES W. SLANEY, *Appellant.**

*Reported in 411 P.2d 426.

*E. Paul Schumann,* for appellant (Appointed counsel for appeal).

*Charles O. Carroll* and *Kenneth O. Eikenberry,* for respondent.

PER CURIAM.—By information, the prosecuting attorney for King County accused the defendant, Charles W. Slaney, with 10 counts of grand larceny involving a different victim in each count, charged to have been committed between June 1 and June 4, 1964. The information stated in each count that defendant had obtained from a named person either by trick, device or bunco or by false and fraudulent representation, a cashier's check of more than $75 value. He now appeals the judgment and sentence imposed on a verdict of guilty on each of the 10 counts.

The jury had substantial evidence from which to find that the following events occurred. The state showed that on May 25, 1964, defendant Slaney, identifying himself as John Smith of the Appliance Collection Company, Smith Tower Building, Seattle, placed the following advertisement in the Seattle Times:

3 men for collection routes with car over 30. Surety bond and-or small cash bond required. Salary $100 per week plus commission and expenses. Experience helpful but not necessary. Write 58-67 Times.

Later he placed a similar advertisement in the same newspaper, identifying himself this time as Jerry Brown of the Cascade Finance Company. On May 26, 1964, he opened a small office in the Vance Building, but managed to reestablish telephone service in the name of the former tenants of that office. Evidence showed that each of the 10 men named in the information as victims of the grand larceny wrote to the box number given in the advertisement and were called by defendant on the telephone.

The 10 witnesses said, in substance, that in response to the advertisement and telephone call they went separately to the Vance Building for interviews with defendant in his office. They said that the defendant told them his company needed and would hire men to collect money from numerous

vending machine routes, and that, because such collections involved large sums of money, each employee hired would have to be bonded. Defendant told them that, since they would be starting work very shortly, the company would have to have some form of security from them in lieu of a fidelity bond until such time as his company could, in due course, obtain such bonds for them from a surety company.

In compliance, each man, on the assumption that he had been hired, gave defendant a $150 cashier's check payable to himself, believing that the check would be held—as defendant described it—in escrow pending issuance of the surety bond. Eight of the ten checks were endorsed by the payee. Defendant's assignments of error concern the two cashier's checks supplied by Joseph T. Broderick and John G. Cawsey, payable to themselves, which had not been endorsed by them. All ten checks had been cashed, including these two checks, and the payees thereof, Broderick and Cawsey, testified at the trial that their signatures thereon were forgeries.

Defendant assigns error to the prosecuting attorney's opening statement and final argument that the two signatures were forgeries and claims error also in the testimony of the witness payees that the writings purporting to be their signatures were forgeries. He urges that reference to and proof of a collateral crime constitutes reversible error and that the defendant had a right to limit the proof to only those crimes which were set forth in the information and on which he was standing trial.

We think that defendant's claims of error are not well taken. Although this court has steadfastly adhered to the rule that proof of crimes collateral to the offenses charged is not admissible where there is no causal or natural connection between the collateral crime and the crime charged (*State v. Barton,* 198 Wash. 268, 88 P.2d 385 (1939)), we have likewise adhered to a number of well established exceptions to the general rule.

In *State v. Vindhurst,* 63 Wn.2d 607, 388 P.2d 552 (1964), we said:

We have said many times that it is grossly and erroneously prejudicial to permit the introduction of evidence of *unrelated* crimes in a criminal trial, unless the evidence comes within one of the recognized exceptions: (1) to show motive or intent, (2) the absence of accident or mistake, (3) a common scheme or plan, (4) identity, or (5) if the evidence is relevant to any material issue before the jury. *State v. Goebel,* 36 Wn. (2d) 367, 218 P. (2d) 300 (1950). Or, such evidence may be admitted if it tends to prove some essential ingredient of the crime charged in the information.

Proof that the signatures on the two checks were forgeries was admissible to prove *inter alia* that defendant knew he had no authority to cash the checks, thus showing both motive and intent. It was admissible also as tending to obviate that defendant mistakenly or accidentally cashed the checks and, likewise, to prove the scheme or plan by which the larceny was consummated. And, finally, proof of the forgeries supplied evidence as to the defendant's identity and showed that he actually obtained the money from the checks. The evidence of forgery was thus admissible under the exceptions to the general rule as set forth in *State v. Evans,* 57 Wn.2d 288, 356 P.2d 589 (1960); *State v. Sedam,* 46 Wn.2d 725, 284 P.2d 292 (1955).

The evidence of forgeries being admissible, counsel could properly allude to it in opening statement and final argument.

Affirmed.