[No. 39823.    Department Two.    October 24, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. BATISTE L. HAMES, JR., *Appellant*.*

*Wm. J. Gaffney*, for appellant.

*Charles O. Carroll* and *William L. Dowell* for respondent.

RUMMEL, J.†—Appellant Hames and Johnnie Goodman were jointly charged with unlawfully possessing and selling marijuana on June 7, 1966. Hames was convicted by the jury and then sentenced, while Goodman was acquitted.

One of the appellant's assignments of error was that he was deprived of a fair trial because of unfair and inflammatory remarks of the prosecutor. However, these

*Reported in 446 P.2d 344.

†Judge Rummel is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

remarks did not transcend the prescribed limits of argument. This assignment is without merit.

The remaining assignments of error revolve around the question of whether the trial court erred in admitting evidence of subsequent conversations between federal narcotics agents and the appellant Hames in which Hames indicated he could sell narcotics to the agents. Although the appellant speaks of these conversations as tending to prove other crimes, actually no sale took place and the testimony probably falls short of establishing other crimes.

Agent McClain testified that on the day charged, June 7, 1966, he went to the house where Hames lived and was introduced by an informer who accompanied him. In brief, his story was that he offered to buy a "lid" of marijuana from Hames, but the latter said he had only a half a lid. Goodman, who apparently overheard the conversation, came out of an adjoining room and offered to sell a half he had. The agent took both amounts for which he paid $25.

The version told by the defendants at the trial was that Johnnie Goodman was not there at all, but the sale was made by his brother, Jimmy Goodman, also known as Jimmy Smith, while Hames was in an adjoining room.

McClain had been observed entering the house by Abbey, another agent, and his companion. These two entered the house after the alleged sale and were introduced as persons who worked for McClain and were interested in purchasing narcotics.

On August 15, 1966 McClain and Abbey returned to visit Hames at his home. It was testified that Hames then said he had sources of supply and could furnish heroin and cocaine as well as marijuana in large or unlimited quantities. There was also testimony by the agents that Hames was later contacted several times by telephone and was still offering to supply narcotics as late as September 12, 1966.

At the beginning of the trial and before the evidence was presented to the jury, counsel for Hames advised the court that an issue regarding the admissibility of the contacts with Hames subsequent to June 7, 1966 would probably

arise. He offered to stipulate that McClain knew Hames and was not mistaken in his identification of Hames, but he did not admit that Hames made the sale.

■ This court has long recognized that a defendant must be tried for the offenses charged in the indictment or information, and that evidence of unrelated crimes may not be admitted unless such evidence falls within the orbit of certain recognized exceptions. These exceptions are to show (1) motive or intent, (2) the absence of accident or mistake, (3) a common scheme or plan, (4) identity, or (5) if the evidence is relevant to any material issue before the jury. *State v. Goebel*, 36 Wn.2d 367, 218 P.2d 300 (1950); *State v. Goebel*, 40 Wn.2d 18, 240 P.2d 251 (1952) (2nd appeal); *State v. Crowder*, 119 Wash. 450, 205 Pac. 850 (1922), evidence of subsequent acts in statutory rape cases to show relationship of parties; *State v. Brown*, 31 Wn.2d 475, 197 P.2d 590, 202 P.2d 461 (1948, 1949) evidence of a second robbery committed subsequently the same night to show modus operandi, common scheme or plan, or identity; *State v. Thompson*, 58 Wn.2d 598, 364 P.2d 527 (1961), a subsequent attempt at rape to show intent and identity; *State v. Johnson*, 60 Wn.2d 21, 371 P.2d 611 (1962), evidence of a subsequent act of indecent liberties as tending to show common scheme or plan; *State v. Vindhurst*, 63 Wn.2d 607, 388 P.2d 552 (1964) evidence of a prior burglary admissible as tending to show possession or control of narcotics where a witness had testified to the burglary as the source; *State v. Leohner*, 69 Wn.2d 131, 417 P.2d 368 (1966), collateral criminal acts under charge of indecent liberties to show common scheme or design; *State v. Russell*, 70 Wn.2d 552, 424 P.2d 639 (1967), forged checks of the same kind found in defendant's pocket at time of arrest to show common scheme, plan or design, and also to help establish identity; and *State v. Harrison*, 72 Wn.2d 737, 435 P.2d 547 (1967), to establish identity in a check case.

In contrast to those cases where the acts of the defendant were in connection with persons unrelated to the crime, in

the instant case all of the subsequent dealings were between the same agents and Hames.

The admissibility of these transactions or conversations can be sustained under three of the exceptions: to show intent, common scheme or plan, and identity. These will be discussed in reverse order.

■ *Identity*. Although counsel for Hames offered to stipulate that McClain knew Hames, the testimony reveals that McClain was introduced to Hames by the informer on the day of the sale. The subsequent conversations tend to prove the identity of Hames as the person who had possession and control of the marijuana and who made the sale. Just because an offer was made to admit that McClain knew Hames, the state is not bound when the issue was the identity of the seller.

*Common scheme or plan*. The application of this exception is more obscure. There is a detailed discussion in *State v. Goebel, supra,* in the second appeal, at 21. There the court indicates that later decisions of this and other courts have permitted such evidence to show not only a preexisting plan or scheme, but a general similarity of the offenses. However, then the court seems to conclude that probably in each such instance the evidence was necessary to prove some essential point which the state was required to prove.

■ *Intent*. Appellant contends that intent is not a necessary ingredient to prove a case of possession or sale of narcotics under RCW 69.33.230. This has been the holding in *State v. Boggs,* 57 Wn.2d 484, 358 P.2d 124 (1961) and in *State v. Vindhurst, supra.* However, the information in the instant case charged that the defendants "willfully, unlawfully and feloniously did have in their possession and did sell." The jury were so instructed in instruction No. 1 as to the form of information, and in instruction No. 2, as to the elements the state had to prove to convict. The state thus assumed an added burden, the instructions were not excepted to, and thus became the law of the case. This caused intent to become an issue, and brings this case squarely under the ruling of *State v. Leohner, supra.* This case in-

volved a charge of taking indecent liberties with girls under 15 years of age. It was also argued there that intent or motive was not an issue and so collateral offenses should not be considered. The identical language, "willfully, unlawfully and feloniously" was employed in the information and the jury instructed upon the meaning of the words. Identical instructions appear in that case and in the instant case, which instruction, No. 9, is as follows:

As used in the information in said cause and these instructions, "willfully, unlawfully and feloniously" means intentionally and purposely, but not accidentally, and without and beyond the authority of law.

In *Leohner, supra,* the court said at 134:

The foregoing instructions were not excepted to and, therefore, became the law of the case. *Crippen v. Pulliam,* 61 Wn.2d 725, 380 P.2d 475 (1963). The case being tried upon the theory that intent was an element of the crime of indecent liberties, it follows that the trial court did not err by allowing the jury to consider appellant's collateral acts in determining whether he intentionally committed the acts with which he was charged.

The judgment is affirmed.

HILL, HUNTER, HAMILTON, and NEILL, JJ., concur.

January 21, 1969. Petition for rehearing denied.