[No. 516-41186-1.    Division One—Panel 1.    October 26, 1970.]

THE STATE OF WASHINGTON, *Respondent*, v. FLOYD ALLEN HENNINGS, *Appellant*.

*Irving C. Paul, Jr.,* for appellant.

*Charles O. Carroll, Prosecuting Attorney,* and *Philip Y. Killien,* for respondent.

JAMES, C. J.—By information, Floyd Hennings was charged with the crime of violating RCW 69.33.230, a section of the Uniform Narcotic Drug Act. The specifics of the charge are that he "on or about the 4th day of June, 1968, willfully unlawfully and feloniously did have in his possession and did sell a certain narcotic drug, to-wit: Heroin."

He was tried by jury and convicted. Hennings agrees that the evidence concerning his possession and sale of heroin to a police informer on June 4 was sufficient to sustain his conviction. His sole claim of error is that evi-

dence of a transaction on June 11, 1968, was improperly admitted over his objection.

The evidence concerning the June 11 transaction was presented as a part of the state's case-in-chief. Hennings presented no evidence in his defense.

The evidence concerning the June 4 transaction was that pursuant to a telephone call from the informer, Hennings met the informer and sold him a quantity of heroin. The transaction was observed by law officers, one of whom was hidden in the trunk of the informer's convertible car. From his vantage point, the concealed officer could both see and hear Hennings and the informer as they exchanged money and drugs.

Other officers observed the transaction from a motor vehicle parked in the vicinty.

The evidence respecting the June 11 transaction described a similarly arranged rendezvous. On this occasion, however, Hennings drove a car to the same meeting place but did not himself have any direct dealings with the informer. Hennings' brother Rex, who had accompanied him, had several conversations with the informer which culminated in the informer giving Rex $105 in marked bills. During the course of the negotiations, Rex returned to the Hennings' car and talked to Floyd Hennings twice before the money was paid. No delivery of narcotics was made to the informer, however, either at the point of the initial rendezvous or later at another location to which the informer was directed to drive. This transaction was observed by the officers in the same manner as they had observed the June 4 transaction.

Later in the morning of the same day, the Hennings brothers were arrested in an apartment reputedly occupied by Floyd Hennings and his family. All of the marked money was found to be in the possession of Rex Hennings. Although Rex Hennings was arrested, no charge was filed against him.

It is Hennings' contention that the evidence of the June 11 transaction was not only highly prejudicial but was

improperly admitted because it was immaterial and irrelevant to any proper issue in the charge against him.

■ Hennings relies upon a time-honored rule of fundamental fairness. The rule was recognized in the early case of *State v. Gottfreedson,* 24 Wash. 398, 64 P. 523 (1901) in quoting from an earlier Michigan case, *People v. Schweitzer,* 23 Mich. 301 (1871):

> The general rule is well settled that the prosecution are not allowed to prove the commission of another and distinct offense, though of the same kind with that charged, for the purpose of rendering it more probable in the minds of the jury that he committed the offense for which he is on trial; and this would be the natural and inevitable effect upon the minds of the jury, of the admission of such evidence, on whatever ground or pretense it might be admitted; and the defendant would thus be prejudiced on the trial of the offense charged, by proof which he has no reason to anticipate, of an offense for which he is not on trial, and to which, when properly called upon to defend, he may have a perfect defense."

*State v. Gottfreedson, supra* at 404.

According to *State v. Morris,* 70 Wn.2d 27, 422 P.2d 27 (1966), this state has never departed from this basic principle. However, *Gottfreedson* also notes that there are exceptions to the rule. The exceptions are as firmly rooted as is the rule. Many cases discuss the rule and its exceptions. In *State v. Vindhurst,* 63 Wn.2d 607, 612, 388 P.2d 552 (1964), we find a typical statement.

> We have said many times that it is grossly and erroneously prejudicial to permit the introduction of evidence of *unrelated* crimes in a criminal trial, unless the evidence comes within one of the recognized exceptions: (1) to show motive or intent, (2) the absence of accident or mistake, (3) a common scheme or plan, (4) identity, or (5) if the evidence is relevant to any material issue before the jury. *State v. Goebel,* 36 Wn. (2d) 367, 218 P. (2d) 300 (1950). Or, such evidence may be admitted if it tends to prove some essential ingredient of the crime charged in the information. *State v. Dinges,* 48 Wn. (2d) 152, 292 P. (2d) 361 (1956), and cases cited.

It is the position of the state that Hennings' sole claim of

error is completely answered by the ruling of *State v. Hames,* 74 Wn.2d 721, 446 P.2d 344 (1968).

The fact pattern of *Hames* is essentially indistinguishable from that in this case. In *Hames,* as here, the charge was that the defendants " 'willfully, unlawfully and feloniously did have in their possession 'and did sell.' " narcotic drugs. *State v. Hames, supra* at 724.

There is one notable difference, however, in the posture of the defense at trial. In discussing the applicability of the exceptions to the "collateral offense" rule, the court in *State v. Hames, supra,* observed at page 724:

> Appellant contends that intent is not a necessary ingredient to prove a case of possession or sale of narcotics under RCW 69.33.230. This has been the holding in *State v. Boggs,* 57 Wn.2d 484, 358 P.2d 124 (1961) and in *State v. Vindhurst, supra.* However, the information in the instant case charged that the defendants "willfully, unlawfully and feloniously did have in their possession and did sell." The jury were so instructed in instruction No. 1 as to the form of information, 'and in instruction No. 2, as to the elements the state had to prove to convict. *The state thus assumed an added burden, the instructions were not excepted to, and thus became the law of the case. This caused intent to become an issue,* and brings this case squarely under the ruling of *State v. Leohner, supra;* . . . In *Leohner, supra,* the court said at 134:
>
> > *The foregoing instructions were not excepted to and, therefore, became the law of the case. Crippen v. Pulliam,* 61 Wn.2d 725, 380 P.2d 475 (1963). The case being tried upon the theory that intent was an element of the crime of indecent liberties, it follows that the trial court did not err by allowing the jury to consider appellant's collateral acts in determining whether he intentionally committed the 'acts with which he was charged.

(Italics ours.)

Hennings directs our attention to his timely motion to strike the word "willfully" from the information. His position was and is that the word is surplusage. But, although the state did not resist, the trial court denied Hennings' motion to strike, saying, "I think under the circumstances

of this charge and information that scienter is a necessity because of the sale." Hennings further points out that consistently throughout the trial he adhered to his position that "intent" was not an element of the crime as defined by the statute. He excepted to the court's instructions which included the word "willfully" in defining the offense for the jury.

The portion of the *Hames* opinion which we have quoted demonstrates that the admission of the "collateral crime" evidence for the purpose of proving intent was approved upon the narrow ground that the defendant failed to take exception to the court's instruction which used the word "willfully." We agree with Hennings that insofar as the ruling in *Hames* is based upon this procedural occurrence, it is not authority for holding that such collateral evidence is admissible over objection to show "intent" on the part of Hennings.

We hold, however, that the evidence of the June 11 transaction was properly admitted. We have so concluded for two reasons.

We first note that although *Hames* approved the "proof of intent" exception on the narrow ground that the defendant failed to voice objection, the decision in *Hames* was not based solely upon the "intent" exception to the general rule. The ruling in *Hames* is that evidence of the collateral offense was also admissible as tending to prove "identity" and "common scheme or plan." If warranted in *Hames*, these exceptions to the rule are even more apropos in this case because the collateral transaction involving Hennings was closer in time and more nearly identical in pattern than were the collateral transactions in *Hames*.

But we further find that the evidence concerning the June 11 transaction was properly admitted for an additional reason. We believe that Judge Revelle correctly ruled that the word "willfully" should not be stricken from the information. In reaching this conclusion, we recognize that the court in *Hames* read the decision in *State v. Boggs*, 57 Wn.2d 484, 358 P.2d 124 (1961) to hold that "intent is not

a necessary ingredient to prove a case of possession or sale of narcotics under RCW 69.33.230." *State v. Hames, supra* at 724.

*Boggs* does so hold.

Our holding in the *Henker* case, [*State v. Henker,* 50 Wn.2d 809, 314 P.2d 645 (1957)] that guilty knowledge or intent is not an element of the crime of possession of narcotics under RCW 69.33.230, is controlling in the disposition of appellant's first contention. [That guilty knowledge is an essential element of the crime.]

*State v. Boggs, supra* at 486.

The court in *State v. Henker, supra,* reasons at page 811:

RCW 69.33.020 [*cf.* Laws of 1951, 2nd Ex. Ses., chapter 22, § 2], under which appellant was charged, reads as follows:

"It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this chapter."

Whether intent or guilty knowledge is to be made an essential element of this crime is basically a matter to be determined by the legislature.

The prior narcotics act, Laws of 1923, chapter 47, § 3, p. 134, provided:

"It shall be unlawful for any person to sell, furnish, or dispose of, or have in his possession *with intent to sell,* furnish, or dispose of any narcotic drug or drugs, except upon the written and signed prescription of a physician regularly licensed to practice medicine and surgery . . ." (Italics ours.)

*Intent to sell* was a necessary element of the crime of possession under the above-quoted statute. *State v. Lee,* (1923), 127 Wash. 377, 220 Pac. 753. Had the legislature intended to retain guilty knowledge or intent as an element of the crime of possession, it would have spelled it out as it did in the previous statute. The omission of the words *with intent* evidences a desire to make mere possession or control a crime. [Citations omitted.]

■■ We respectfully disagree with the conclusion in *Henker* that the legislative objective was to eliminate scienter (willful guilty knowledge) as an essential ingredi-

ent of the crime of trafficking in narcotics. As we discern the legislative purpose, it is to make *possession* of narcotics a crime without proof of a *specific* intent to *sell*. However, the elimination of the requirement of proof of a *specific* intent to *sell* does not, we believe, warrant the conclusion that a *general* intent—willful guilty knowledge—need not be proven.

This basic ingredient or element of most crimes has not always been clearly conceived. It is variously called "scienter," "guilty knowledge," "willfulness," or "evil" or "felonious" intent. It is a necessary "element" of a crime involving "moral turpitude."

Without doubt, by contemporary community standards possession and sale of narcotics, unless authorized by law, is a crime which by its very nature involves "moral turpitude." Crimes which involve moral turpitude are categorized as crimes mala in se. *State v. Turner,* 78 W.D.2d 276, 474 P.2d 91 (1970).

The peripheral evils associated with the narcotics traffic —prostitution, robbery, and even homicide—are so well recognized that the assertion that possession and sale of narcotics is a crime malum in se needs no elaboration.

The statute construed in *State v. Turner, supra,* made criminal the public desecration of our country's flag. The then statutory definition did not include any requirement that the act of desecration be willful or intentional.[1] The trial judge instructed that "it is not required that you find that the defendant intended to violate the law. You are only required to find that the defendant performed the physical act charged." *State v. Turner, supra* at 279. In ruling that a felonious intent was a necessary and therefore an implied element of the crime the court, sitting en banc, said at page 282:

> [U]nless the statute expressly eliminates the element of intent or design or defines the kinds of offenses which, by their very nature, are classified judicially as mala prohi-

[1]The 1969 legislature amended the Uniform Flag Law to include the requirement that desecration of the flag be committed by *knowingly* and publicly casting contempt. RCW 9.86.030.

bita, the ingredients of intent, design and purpose should be deemed indispensable to a proof of guilt.

In *Seattle v. Jones*, 3 Wn. App. 431, 475 P.2d 79 (1970), we considered an ordinance which proscribed "loitering for the purposes of prostitution," an offense which we found to be malum in se. As here, the statutory definition of the crime did not include any reference to a "felonious intent." We found, however, that proof of a felonious intent was essential and that this element was to be implied in the absence of express statutory language. The rationale of this ancient concept is that unless proof of willfulness or guilty knowledge is required, guilt could be assessed for an innocent, unintentional or inadvertent act.

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory "But I didn't mean to," and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution. Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a "vicious will."

(Footnotes omitted.) *Morissette v. United States*, 342 U.S. 246, 250, 96 L. Ed. 288, 72 S. Ct. 240 (1952). *See also* 21 Am. Jur. 2d *Criminal Law* § 81 (1965).

For the reasons discussed, we hold that the trial judge correctly ruled that "willfulness" was a necessary element of the crime. Evidence of the June 11 transaction was relevant and material to that issue because it would tend to negate the presumption of innocence and establish that a felonious intent inhered in the June 4 transaction.

The judgment is affirmed.

FARRIS and SWANSON, JJ., concur.