[No. 4625–1.   Division One.   March 28, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLY D. SMITH, *Appellant.*

*Murray B. Guterson,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Ralph Maimon, Deputy,* for respondent.

SWANSON, J.—Willy D. Smith appeals from a judgment and sentence finding him guilty of "unlawfully and feloniously" delivering cocaine to a police undercover narcotics detective in violation of the Uniform Controlled Substances Act, RCW 69.50.401(a).[1]

At the time of his arrest, Smith was employed by the University of Washington as an assistant professor of psychology. His principal area of expertise and research dealt with the psychological phenomenon known as "Machiavellianism." Briefly stated, the political principles advocated by Niccolo Machiavelli in his book, *The Prince,*[2] have come to be characterized by the methods of expediency, craftiness, and duplicity. It was Smith's contention or thesis that persons commonly dealing in drugs, and especially those dealing in cocaine, were highly manipulative individuals who exhibited Machiavellian characteristics.[3] In order to test his hypothesis, Smith reasoned that it was necessary for him to observe people actually dealing in drugs and to gain their confidence. As a result of conscious

---

[1]"Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." RCW 69.50.401(a), in part.

[2]Niccolo Machiavelli was a Florentine statesman and writer who lived from 1469 to 1527.

[3]As Smith explained during direct examination: "Q (By Mr. Guterson) What would you identify as being your basic hypothesis with respect to persons involved in drug distribution? A My basic contention is that those are drug dealers, specifically cocaine dealers, are highly manipulative and exploitive, and that they tend to assume, even adopt specific behaviors that I think are pathological, given that the situation is pathological, meaning that if they are in a situation where a transaction is about to occur, they are highly manipulative. They know how to get a potential buyer to go through with the process of being convinced that this is worthy, the purchase."

endeavors on his part, Smith became acquainted with various people involved in drug activities. Through these contacts Smith became acquainted with Charles Harris, an undercover Seattle police narcotics detective. On three separate occasions, Detective Harris purchased from Smith varying quantities of cocaine.

Although Smith never denied his participation in the delivery of cocaine to Harris, he does contend that he acted solely in an effort to gain valuable research information needed to further his studies in Machiavellianism. As such, Smith argues, he lacked the requisite guilty or evil intent he asserts is needed to prove the crime charged. While we find Smith's defense to be unique and novel, we nevertheless affirm the trial court.

In their respective briefs and during the course of the oral arguments, both parties stated that the statute under which Smith was charged is silent as to the element of intent. However, from a reading of the statute, we find that the legislature interjected the element of intent into the statute when it said that "it is unlawful for any person to manufacture, deliver, or possess *with intent* to manufacture or deliver, a controlled substance." (Italics ours.) In this respect, the Uniform Controlled Substances Act differs from the previous uniform narcotic drug act, RCW 69.33, which did not require guilty knowledge or intent as an element of the crime.[4] *See State v. Boggs,* 57 Wn.2d 484, 358 P.2d 124 (1961). From the plain language of the statute we conclude that the intent to deliver or manufacture a controlled substance is a required element of RCW 69.50.401(a).

If we assume, as did the parties, the statute's silence with regard to intent, we would still feel compelled

---

[4]RCW 69.33.230 provided as follows: "It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this chapter." This section was subsequently repealed by the Laws of 1971, 1st Ex. Sess., ch. 308, § 69.50.606, effective May 21, 1971.

to hold that intent is a necessary element of proof. At common law, the general rule was that intent or scienter was a necessary element in the proof of every crime. This rule was also followed in regard to statutory crimes even where the statutory definition did not include the intent element. *United States v. Balint,* 258 U.S. 250, 66 L. Ed. 604, 42 S.' Ct. 301 (1922). In more recent times, however, the legislature has enacted criminal statutes that require no intent on the part of the perpetrator. Under these circumstances, a court of appellate review is faced with the responsibility of construing the statute in light of legislative intent. *Morissette v. United States,* 342 U.S. 246, 96 L. Ed. 288, 72 S. Ct. 240 (1952).

In order to facilitate a better means to determine whether or not the element of intent is a part of the crime charged, various classifications of crimes have emerged. Perhaps of greatest import has been the distinction between crimes mala in se and those mala prohibita. Generally, a malum in se crime is one in which a criminal intent is an element. On the other hand, crimes denoted as mala prohibita are characterized by their lack of intent. *See* W. Clark & W. Marshall, *Law of Crimes* § 5.10 (7th ed. 1967); W. LaFave & A. Scott, *Criminal Law* § 6 (1972). While this distinction is useful, an exception is recognized where the legislature declares an act criminal without regard to intent or knowledge of the actor and yet the defined crime involves moral turpitude. *State v. Gregor,* 11 Wn. App. 95, 521 P.2d 960 (1974). In this circumstance, guilty knowledge will be deemed an essential ingredient. *State v. Turner,* 78 Wn.2d 276, 474 P.2d 91, 41 A.L.R.3d 493 (1970); 22 C.J.S. *Criminal Law* § 30 (1961). This court has previously stated that trafficking in narcotic drugs is unquestionably conduct involving moral turpitude. *State v. Hennings,* 3 Wn. App. 483, 475 P.2d 926 (1970). Because crimes which involve moral turpitude are categorized as crimes mala in se, *State v. Turner, supra; State v. Thrift,* 4 Wn. App. 192, 480 P.2d 222 (1971), we find that even if RCW 69.50.401(a) failed to include the element of intent, scienter would be a necessary

and implied element unless expressly eliminated by the statute. *Morissette v. United States, supra; State v. Thrift, supra.*

Turning to the defendant Smith's contention that he lacked the requisite intent to deliver cocaine, we find sufficient evidence from the record to indicate that Smith possessed cocaine with the intent to deliver that substance to Detective Harris. It is uncontroverted that Smith did indeed deliver the cocaine to Harris and that he did so willingly. There is also evidence that Smith failed to acquire the approval of the University of Washington Department of Psychology for his studies involving human subjects. Nor did Smith inform any law enforcement officials or legal representatives of the state of his intended research into the drug culture. There is also evidence within the record which indicates that Smith was enjoying a substantial monetary return from the sale of narcotic drugs and that teaching was merely an adjunct to his drug-related activities. It is an undeniable principle of criminal law that every man of sufficient mental capacity to know what he is doing is presumed to have intended the natural and probable consequences of his voluntary acts. *Haugen v. United States,* 153 F.2d 850 (9th Cir. 1946); *cf. State v. Leach,* 36 Wn.2d 641, 219 P.2d 972 (1950); *State v. Louther,* 22 Wn.2d 497, 156 P.2d 672 (1945). In addition, the trier of facts in a criminal case may infer the element of intent from the established facts. *State v. Davis,* 73 Wn.2d 271, 438 P.2d 185 (1968); 22 C.J.S. *Criminal Law* § 33 (1961). Moreover, as this court stated in *State v. Luoma,* 14 Wn. App. 705, 544 P.2d 770 (1976),[5] specific as well as general criminal intent may be inferred from the natural and probable consequences of an act. *See also State v. Davis, supra; State v. Lewis,* 69 Wn.2d 120, 417 P.2d 618 (1966). Under the circumstances, we believe the trial court was justified both from direct and inferential evidence in finding that Smith did deliver cocaine with the intent to do so.

---

[5]*Reversed on other grounds,* 88 Wn.2d 28, 558 P.2d 756 (1977).

Affirmed.

CALLOW and ANDERSEN, JJ., concur.

Petition for rehearing denied August 8, 1977.

Review by Supreme Court pending February 3, 1978.