[No. 6044–1.   Division One.   September 4, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. LEON EDWARD WEAVER, *Appellant.*

*Dan William Kilpatric of Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Troy Yancey, Deputy,* for respondent.

CALLOW, C.J.—The defendant, Leon Weaver, was found guilty of one count of unlawfully and feloniously possessing heroin. The information read:

> That the defendant Leon Edward Weaver, in King County, Washington, on or about April 5, 1977, unlawfully and feloniously did have in his possession a certain controlled substance, and a narcotic drug, to–wit: heroin;
> Contrary to RCW 69.50.401(c), and against the peace and dignity of the state of Washington.

He had waived a jury and was tried by the court. He appeals from his conviction, contending that the trial court erred in failing to consider guilty knowledge of the possession of a controlled substance as an element of the offense charged, and that the evidence was insufficient to support certain of the court's findings of fact.[1]

---

[1]The findings of fact pertinent to the issues raised are as follows:

"1. That in August of 1976 the King County Police searched the residence located at 713 Empire Way South, King County, Seattle, Washington; that the police found mail, documents and personal property showing that this was the residence of the defendant, Leon Edward Weaver;

"2. That on 5 November 1977 Detective John Tolton of the King County Police found the defendant sleeping at this residence; no other persons were there;

"3. That up to the date of 5 April 1977 Detective Frank Roesler observed the defendant at this residence approximately 12 times;

"4. That on 5 April 1977 the Seattle Police searched this residence and found evidence that it was the residence of the defendant;

"5. That on 5 April 1977 the police searched the kitchen of this residence and found documents, showing that the defendant resided at this residence, and paraphrenalia [*sic*] used in connection with the use and distribution of heroin; that heroin was found in a wastebasket in this kitchen;

"6. That the defendant and members of his family contrived a system with the predetermined purpose to make it appear that the defendant did not reside at this residence;

During the evening of April 5, 1977, Seattle police detectives executed a search warrant on a 3–bedroom house in Seattle. During the search, one of the detectives recovered a yellow balloon from a small trash can. This was analyzed and found to contain a residue of heroin. Also seized from the kitchen were funnels, a dietitian scale, lactose, sandwich bags, a coffee mill containing lactose, a strainer, a recently washed playing card, some balloons, and a letter addressed to the defendant. No one was at home during the course of the search, although at one point the defendant's mother stopped by. The defendant was later arrested on the basis of the materials seized.

The State brought out at trial that 8 months before the search a prior search of the house revealed photographs depicting the defendant, his sister, and a jukebox with the name "Mr. Leon" on it. The pictures were taken at the house in the bar area between the kitchen and living room. Personal property, mail addressed to the defendant at that address, and other documents belonging to the defendant were also found in the living room. The defendant's cousin, Johnie Weaver, was arrested upon his arrival at the house during the course of the earlier search. The defendant was not present at that time. Approximately 5 months before the search of April 5, 1977, the defendant was awakened and arrested at the house. A detective testified that the defendant went into the southeast corner bedroom and dressed. Another detective testified that over a period of several months up to April 5, 1977, he observed the defendant at the residence about a dozen times.

The defendant presented testimony that legal title to the house was held by the defendant's Aunt Ruth, and that the defendant's brother, Vernon, held equitable title to the house. The defendant's mother and aunt are twins, as are his father and uncle. According to Johnie Weaver, the defendant's first cousin, the jukebox was owned by all of

---

"7. That the accumulation of all the evidence showed that the defendant had dominion and control over the heroin."

the Weavers who stayed at the house from time to time, of which there were six. He also stated that the southeast corner bedroom was used by whoever was staying there, and that unrelated overnight visitors frequently stayed at the house. Vernon Weaver was said to have been residing at the house on April 5, 1977. Johnie Weaver also testified that the house was sometimes used as an after–hours place, that he was there maybe every other night, and that the defendant was there about the same number of times. Both Johnie and Vernon Weaver indicated that Leon stayed at times at his mother's house, at his aunt's house, and at the Empire Way house; he received correspondence at all three addresses. Both also testified that the defendant did not use drugs, but that Vernon did.

At the close of the State's case and again at the close of all the evidence, the defendant moved to dismiss for failure of the State to prove prima facie the elements of possession and knowledge. The motion was denied.

The trial court found, in part, that "the defendant and members of his family contrived a system with the predetermined purpose to make it appear that the defendant did not reside at [the] residence," and that the accumulation of all the evidence showed that the defendant had dominion and control over the heroin. The trial court made no finding as to the defendant's knowledge of the presence of the drug.

The defendant first assigns error to the trial court's failure to find that the defendant had guilty knowledge of the heroin's presence on the premises searched. The State contends that this was proper because guilty knowledge is not an element of the crime of possession of a controlled substance. Therefore, the issue presented is whether it must be proven, and the trial court must find, that the defendant had knowledge of the presence of the illicit drug.

Under the Uniform Narcotic Drug Act, Laws of 1959, ch. 27, p. 197, which was replaced in 1971 by the Uniform Controlled Substances Act, RCW 69.50, it was declared unlawful

for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this chapter.

Laws of 1959, ch. 27, § 69.33.230, p. 207. In contrast, the previous narcotics act had provided:

It shall be unlawful for any person to sell, furnish, or dispose of, or have in his possession *with intent* to sell, furnish, or dispose of any narcotic drug or drugs, except upon the written and signed prescription of a physician . . .

(Italics ours.) Laws of 1923, ch. 47, § 3, p. 134. The legislative omission from the Uniform Narcotic Drug Act (UNDA) of the words *with intent* contained in the 1923 act has been held to indicate the legislative purpose to make mere possession a crime. *State v. Boggs,* 57 Wn.2d 484, 485–86, 358 P.2d 124 (1961); *State v. Henker,* 50 Wn.2d 809, 812, 314 P.2d 645 (1957). Accordingly, the State bore the burden of proving beyond a reasonable doubt that the defendant was in either actual or constructive possession of a narcotic drug, at which point the burden was cast upon the defendant as a matter of defense to raise a reasonable doubt as to his unlawful possession by showing that it was unwitting, or authorized by law, or acquired lawfully, or was otherwise permissible under the statute. *State v. Givens,* 74 Wn.2d 48, 442 P.2d 628 (1968); *State v. Mantell,* 71 Wn.2d 768, 770–71, 430 P.2d 980 (1967).[2]

The construction given the UNDA as eliminating the element of guilty knowledge was commented on in *State v. Hennings,* 3 Wn. App. 483, 488–89, 475 P.2d 926 (1970), as follows:

We respectfully disagree with the conclusion in *Henker* that the legislative objective was to eliminate scienter

---

[2]*See also State v. Morris,* 70 Wn.2d 27, 34, 422 P.2d 27 (1966); *State v. Vindhurst,* 63 Wn.2d 607, 613, 388 P.2d 552 (1964); *State v. Boggs,* 57 Wn.2d 484, 487, 358 P.2d 124 (1961). The majority of courts hold that guilty knowledge or intent is an element of the crime of possession of narcotics. Note, 7 Gonz. L. Rev. 329, 331–33 (1972); Annot., 56 A.L.R.3d 948 (1974); Annot., 91 A.L.R.2d 810, 811 & n.1, 821 (1963).

(willful guilty knowledge) as an essential ingredient of the crime of trafficking in narcotics. As we discern the legislative purpose, it is to make *possession* of narcotics a crime without proof of a *specific* intent to *sell.* However, the elimination of the requirement of proof of a *specific* intent to *sell* does not, we believe, warrant the conclusion that a *general* intent—willful guilty knowledge—need not be proven.

The *Hennings* case construed the UNDA to require proof of willful guilty knowledge. This was in accord with the general rule that absent the legislature's express omission by words of scienter or guilty knowledge from a malum in se crime, the court will construe the statute so as to require proof of guilty knowledge. *State v. Boyer,* 91 Wn.2d 342, 344, 588 P.2d 1151 (1979); *State v. Turner,* 78 Wn.2d 276, 283, 474 P.2d 91, 41 A.L.R.3d 493 (1970); *State v. Smith,* 17 Wn. App. 231, 233, 562 P.2d 659 (1977). Those cases which adhered to the no–knowledge rule conceded that "in order to give rise to the presumption of unlawfulness, the circumstances and duration of the possession of contraband must afford the possessor the opportunity of discovering what it is that he possesses." *State v. Gerke,* 6 Wn. App. 137, 141, 491 P.2d 1316 (1971); *see also State v. Weiss,* 73 Wn.2d 372, 375, 438 P.2d 610 (1968); *State v. Emerson,* 5 Wn. App. 630, 635, 489 P.2d 1138 (1971).

The enactment of the Uniform Controlled Substances Act in 1971 made it unlawful "for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." RCW 69.50.401(a). In addition, it was declared unlawful

for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this chapter.

RCW 69.50.401(c). The earlier cases dealing with the charge of possession with intent to deliver, RCW 69.50.401(a), held that guilty knowledge of the thing possessed was not an element of the crime, citing cases involving the UNDA.

*State v. Perry,* 10 Wn. App. 159, 162–63, 516 P.2d 1104 (1973); *State v. Singleton,* 9 Wn. App. 399, 407–08, 512 P.2d 1119 (1973). So too, where the charge was simple possession, RCW 69.50.401(c), guilty knowledge was not required to be proved. *State v. Edwards,* 9 Wn. App. 688, 690, 514 P.2d 192 (1973); *State v. Singleton,* 9 Wn. App. 327, 335, 511 P.2d 1396 (1973); *State v. Dodd,* 8 Wn. App. 269, 275, 505 P.2d 830 (1973).

A conflict later developed as to whether guilty knowledge was an element of charges brought under RCW 69.50-.401(a). *State v. Smith,* 17 Wn. App. 231, 234–35, 562 P.2d 659 (1977),[3] using the rule of construction applied in *State v. Hennings, supra,* held that guilty knowledge of the thing possessed was an element of the crime, while *State v. Boyer,* 19 Wn. App. 338, 576 P.2d 902 (1978), *aff'd on other grounds,* 91 Wn.2d 342, 588 P.2d 1151 (1979), held that while guilty knowledge was an element to be proved, proof, beyond a reasonable doubt, of possession or delivery gave rise to the presumption that guilty knowledge existed. *State v. Wilson,* 20 Wn. App. 592, 597, 581 P.2d 592 (1978), held that guilty knowledge was not an element where the crime charged possession under RCW 69.50.401(c). The *Wilson* case, however, relied solely upon the UNDA cases and the *Boyer* case, the reasoning of which was subsequently rejected in *State v. Boyer,* 91 Wn.2d 342, 588 P.2d 1151 (1979).

We find in *State v. Boyer, supra* at 344, the following:

The issue is whether guilty knowledge, an understanding of the identity of the product being delivered, is a part of the crime. *The intent language in the statute does not appear to resolve this issue since that language, rather, addresses a different question, whether or not there is an "intent to manufacture or deliver."* The language of

---

[3]*State v. Smith, supra,* points out that unlawful possession is conduct involving moral turpitude. Where a crime involves moral turpitude, proof of guilty knowledge is an essential element. *State v. Turner,* 78 Wn.2d 276, 474 P.2d 91, 41 A.L.R.3d 493 (1970).

the statute thus provides no guidance on the issue before us. However, without the mental element of knowledge, even a postal carrier would be guilty of the crime were he innocently to deliver a package which in fact contained a forbidden narcotic. Such a result is not intended by the legislature. Accordingly, absent express legislative language to the contrary, we find in the context of this statute, its history and language, that guilty knowledge is intrinsic to the definition of the crime itself. *Guilty knowledge must be proven beyond a reasonable doubt in conviction of this defendant under the statute.*

(Italics ours.)

In the recent case of *State v. Sainz,* 23 Wn. App. 532, 596 P.2d 1090 (1979), it is stated at pages 539-40:

In Washington, the State need not prove that an accused intended to possess drugs or had actual knowledge of their existence in order to present a prima facie case of possession. . . . The State sustains its burden if it proves beyond a reasonable doubt that the defendant had dominion and control over either the contraband or the premises on which it was found. . . . Mere proof of possession is sufficient, absent a showing *by the defendant* that the possession was unwitting, authorized by law or otherwise excusable under the statute. . . .

It is a legislative, not a judicial, function to determine whether intent or guilty knowledge is an essential element of constructive possession. . . . RCW 69.50.401(c) is devoid of an intent requirement, and we will not judicially supply that element if the legislature has chosen to omit it.

(Citations omitted.) The *Sainz* decision does not refer to the Supreme Court decision in *State v. Boyer, supra,* and we deem it appropriate to follow the directive of that decision. The rationale of the *Boyer* and *Hennings* opinions applies with equal force to a charge of possession under RCW 69.50.401(c). Therefore, we reverse the judgment of the trial court and remand the cause for entry of a finding of fact on the question of whether or not the defendant had

guilty knowledge that the drug was a controlled substance.

Finally, the defendant contends that there is no substantial evidence present to support the trial court's finding "[t]hat the defendant and members of his family contrived a system with the predetermined purpose to make it appear that the defendant did not reside at this residence." The State claims substantial evidence does exist to support the finding, and, even if not, the finding is harmless error.

Substantial evidence is not present to support the finding. The following factors are argued by the State to support the court's finding: that the defendant's cousins held legal and equitable title to the house; that numerous members of the family had bought expensive items in the house; that some other members of the defendant's family stayed at the residence on various occasions; and that members of the defendant's family testified that he resided at the house at times. When we draw all reasonable inferences from this evidence in favor of the State and interpret it most strongly against the defendant, the record does not support the conclusion that the family *contrived* together with a predetermined purpose. The essential link is missing.

We cannot tell whether or not this erroneous finding was prejudicial to the defendant. The trial court found constructive possession to have been shown by "the accumulation of all the evidence." We cannot determine whether the defendant would have been convicted but for the error of the trial court. However, should the trial court find on remand that the defendant had "guilty knowledge" of the illicit nature of the substance and, without the presence of sufficient evidence to find a contrived predetermined purpose to make it appear that the defendant did not reside at the residence, still find "[t]hat the accumulation of all the evidence showed that the defendant had dominion and control over the heroin," then such findings by the court would support the conclusion of guilt.

92

The judgment of the trial court is reversed and the case remanded for further proceedings consistent herewith.

JAMES and WILLIAMS, JJ., concur.

Reconsideration denied November 6, 1979.