[No. 1434-2. Division Two. August 27, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. WALTER
METCALF, *Appellant*.

*Carl D. Teitge* and *Paul Sinnitt*, for appellant.

Donald F. Herron, Prosecuting Attorney, and Joseph D. Mladinov, Special Counsel, for respondent.

EVANS, A.C.J.*—Defendant, Walter Metcalf, appeals from a conviction on two counts of attempting to bribe a witness.

Defendant makes numerous assignments of error on appeal relating to evidentiary matters and the instructions to the jury. He also challenges the sufficiency of the evidence on each of the two counts. Because of this challenge and the unusual turn of events which took place during the trial, we must present a rather lengthy summary of the testimony; we will do so in a light most favorable to the State.

On July 4, 1972, the home of Robert and Suzanne Satiacum was burglarized and over $10,000 in cash was stolen. Suzanne Satiacum surprised the two burglars at her home and they fled on foot. One of the burglars dropped a walkie-talkie during his flight. The burglars were apprehended by police within minutes and were eventually tried and convicted.[1] Mrs. Satiacum was a key witness at that trial, and it is not disputed that she testified fully and truthfully.

At the time the burglary occurred, Metcalf and an unidentified companion were seen driving very slowly in the area of the Satiacum residence. Metcalf testified that he was looking for a certain lumber company located nearby. He was, however, apparently a suspected accomplice in the burglary.

The alleged acts of attempted bribery which are the subject of this prosecution took place, according to the information, on or about July 10, 1972, and again on or about October 6, 1972. The putative object of the bribe was Suzanne Satiacum, who also had been the defendant's paramour for some 8 years.

---

*Judge Hugh H. Evans is serving as a judge pro tempore of the Court of Appeals pursuant to Laws of 1973, ch. 114.

[1]Their conviction was affirmed by this court. State v. Montague, 10 Wn. App. 911, 521 P.2d 64 (1974).

Whatever Metcalf's role may have been with respect to the actual burglary, it appears that he took an unusual interest in the subsequent prosecution of the burglars. Immediately after their apprehension, Metcalf posted a $20,000 cash bond for the burglars, appeared with them at their arraignment and trial, and paid their trial attorney. It is also apparent that Metcalf was actively seeking to either have the burglars acquitted or the charges dropped. Whether he was pursuing this end by having Suzanne Satiacum sign a false affidavit or merely having her agree to restitution in exchange for dropped charges is the primary area of dispute in this case.

Patricia Jackson, a close friend of Suzanne Satiacum, testified that on July 10, 1972, she was contacted by the defendant, who asked her to tell the Satiacums that they would receive $60,000 if they would give a story to the effect that Metcalf had been given permission by the Satiacums' daughter, Karen, to enter their home in order to retrieve some money owing him as a result of a business partnership he had with Robert Satiacum, but that he sent the two men accused of the burglary instead. Mrs. Jackson testified that she was contacted again in October by Metcalf, who told her there was a document awaiting Suzanne Satiacum's signature, and a check. The contents of the document were not disclosed.

Jack Tanner, an attorney and a close friend of the Satiacums, testified that on July 25, 1972, defendant and Robert Kerr, the burglars' attorney, met him and sought to induce him to persuade Mrs. Satiacum to sign an affidavit containing a story similar to that related by Pat Jackson. (Kerr admitted that a meeting took place, but testified that it took place several months after July 25, and that the conversation merely concerned the possibility of restitution to the Satiacums if they would drop their charges.)

Tanner also testified that on October 6, 1972, the defendant told him he wanted a signature on an affidavit and that he had $10,000 with him. The contents of the affidavit were not revealed to Tanner. Tanner further testified (over de-

fendant's objection) that in early October 1972, one Harold Rios contacted him and told him he was with the defendant. Rios then met with Tanner about "the trouble" they were having with Suzanne Satiacum's testimony. Rios was not called to testify, and testimony was allowed showing that defendant and Rios were acquainted with one another.

Allan Overland, a former attorney of defendant, was allowed to testify (over defendant's objection) that in early October 1972 Metcalf had asked him about the proper uses of a statement in court and had told him that he was afraid Suzanne Satiacum would lie at the burglars' trial. Mr. Overland was also allowed (over defendant's objection) to answer questions concerning his representation of one of the burglars at a habitual criminal proceeding. The testimony indicated that a deputy prosecutor sought to induce the burglars' cooperation in an undisclosed proceeding through the use of threats.

The prosecution called Robert and Suzanne Satiacum to testify as key witnesses. Both had previously corroborated Jack Tanner's and Pat Jackson's testimony in interviews with the prosecutor, and in testimony, given under oath, before a special inquiry judge. But upon taking the stand at defendant's trial, both recanted their earlier testimony and statements, declaring that Metcalf had never approached them in an effort to induce Mrs. Satiacum to testify falsely at the burglars' trial or to sign a false affidavit. Both stated that they had lied earlier because they were angry with Metcalf.

Mrs. Satiacum did testify that in October 1972 Harold Rios and a Charles Hobbs had asked her to sign an affidavit that was admitted as an exhibit in the case. The affidavit provided that she would have no objection to the charges against the burglars being dropped if restitution were made, and that the two men may have been given permission, without her knowledge, to enter her home. Mrs. Satiacum testified that she was not offered money or anything of value in exchange for her signature, nor was the defend-

ant's name mentioned. She admitted, however, that on July 5, 1972, an unknown person called her about "straightening out your story," and that she was threatened by an anonymous caller in August or September 1972. The caller referred to a message from Pat Jackson.

Robert Satiacum testified (after recanting his former statements and testimony) that he had met with the defendant on several occasions in September or October 1972, had discussed restitution in exchange for dropped charges, and that defendant had something for Mrs. Satiacum to sign.

■ We turn now to the defendant's challenges to the sufficiency of the evidence. We are mindful that, as a reviewing court, we can only disturb a jury verdict on the grounds of insufficiency of proof if, after viewing the evidence and inferences therefrom in a light most favorable to the State, there is not substantial evidence to support the conviction. *State v. Hutton*, 7 Wn. App. 726, 502 P.2d 1037 (1972); *State v. Randecker*, 79 Wn.2d 512, 487 P.2d 1295 (1971).

■ Applying this rule to the record before us, we are persuaded that there was not substantial evidence to support the conviction on count 3 (the October 6, 1972, events). The required quantum of proof was, however, present to sustain a conviction on count 2 (the July 10, 1972, events). We note preliminarily that while the Satiacums' former testimony and statements implicating the defendant were admitted for impeachment purposes, this is not substantive evidence and must be disregarded. *State v. Jefferson*, 6 Wn. App. 678, 495 P.2d 696 (1972); *Gams v. Oberholtzer*, 50 Wn.2d 174, 310 P.2d 240 (1957); *State v. Thorne*, 43 Wn.2d 47, 260 P.2d 331 (1953).

The strongest evidence pertaining to count 3 (events of October 6, 1972) is as follows. Pat Jackson was contacted by defendant concerning a document of unknown content which was awaiting Mrs. Satiacum's signature, and a check was also mentioned. Jack Tanner was offered $10,000 by

the defendant for Suzanne Satiacum's signature on an affidavit whose contents were not known to Tanner. Harold Rios, an acquaintance of the defendant, contacted Tanner concerning Mrs. Satiacum's testimony.

The crime of attempted bribery requires a showing that something of value was offered or promised so as to induce a witness to give false testimony or withhold true testimony. RCW 9.01.070; RCW 9.18.040. There is nothing about the events of October 1972 which would lead to anything more than a speculative conclusion that Metcalf was attempting to bribe Suzanne Satiacum.

We think that the contents of the documents referred to by Mrs. Jackson and Mr. Tanner are a matter of pure conjecture. Considering Mrs. Satiacum's testimony as well as the affidavit which was admitted into evidence, one could just as easily hypothesize that Metcalf had perhaps abandoned his earlier plan of inducing Suzanne Satiacum to change her testimony and was now willing to settle for an affidavit approving restitution for dropped charges, along with a statement that the burglars "may" have had permission to enter her house. The procurement of a signature on such an affidavit would not constitute the crime of bribery.

We therefore reverse the conviction on count 3 and direct that a judgment of dismissal be entered.

As to count 2, we find that the testimony of Pat Jackson, as supported by Jack Tanner, is sufficient to support the verdict. Moreover, we find no assigned error which would warrant setting aside this verdict and remanding it for a new trial. We will first consider defendant's arguments relating to the instructions.

Defendant assigns error to a supplemental instruction given to the jury stating that defendant could be convicted for either attempting to induce a witness to give false testimony *or* withhold true testimony. The information against Metcalf read in the conjunctive, to wit: inducing a witness to give false testimony *and* withhold true testi-

mony. The statute upon which the charge was based reads in the disjunctive.[2] Defendant contends that the jury cannot be instructed in a manner different from the charge against him. We disagree. As stated in *State v. Dixon*, 78 Wn.2d 796, 802, 479 P.2d 931 (1971):

> Acts or conduct described in a penal statute in the disjunctive or alternative may be pleaded in the conjunctive. *State v. Rooney*, 2 Wn.2d 17, 97 P.2d 156 (1939). If the charge is in the conjunctive, the information is held to charge a single crime committed in any one or all of the ways charged. *State v. Holedger*, 15 Wash. 443, 46 P. 652 (1896); *State v. Brummett*, 98 Wash. 182, 167 P. 120 (1917); *State v. St. Clair*, 21 Wn.2d 407, 151 P.2d 181 (1944). Where, under a penal statute, a single offense can be committed in different ways or by different means and the several ways or means charged in a single count are not repugnant to each other, a conviction may rest on proof that the crime was committed by any one of the means charged. *State v. Parmenter*, 74 Wn.2d 343, 444 P.2d 680 (1968).

*See generally* 4 *Wharton's Criminal Law and Procedure* § 1798 (Anderson ed. 1957). The alternative methods of committing a crime are repugnant to one another only if proof of one will disprove the other. *State v. Parmenter*, 74 Wn.2d 343, 444 P.2d 680 (1968); *State v. Harrison*, 6 Wn.2d 625, 628, 108 P.2d 327 (1940). The alternative methods of the crime of bribery (*i.e.*, inducing a witness to give false testimony or withhold true testimony) are not repugnant to one another. Since the information could properly read in the conjunctive, and defendant could have been convicted under either alternative, it follows that no harm

---

[2] RCW 9.18.040 reads:

"Every person who shall give, offer or promise, directly or indirectly, any compensation, gratuity or reward to any witness or person who may be called as a witness, upon an agreement or understanding that the testimony of such witness shall be thereby influenced, or who shall wilfully attempt by any other means to induce any witness or person who may be called as a witness to give false testimony, or to withhold true testimony, shall be punished by imprisonment in the state penitentiary for not more than ten years, or by a fine of not more than five thousand dollars, or by both."

resulted when the jury was instructed to read the charge in the disjunctive.

We are mindful, however, that no instruction was supplied advising the jury that a unanimous vote was necessary for a conviction under either alternative. But such an omission does not amount to reversible error when there is sufficient evidence to support a conviction under either alternative. *State v. Carothers*, 84 Wn.2d 256, 525 P.2d 731 (1974); *State v. Arndt*, 12 Wn. App. 248, 529 P.2d 887 (1974), *cert. granted*, 85 Wn.2d 1004 (1975); *State v. Medley*, 11 Wn. App. 491, 524 P.2d 466 (1974); *State v. Hutton*, 7 Wn. App. 726, 502 P.2d 1037 (1972). *See State v. Golladay*, 78 Wn.2d 121, 470 P.2d 191 (1970); *State v. Cadena*, 74 Wn.2d 185, 443 P.2d 826 (1968). As we indicated above, there was sufficient evidence in this case to support the conviction on count 2, and as one alternative necessarily involves the other, the evidence was sufficient under either alternative.

Defendant also contends that the jury should have been instructed that an offer of restitution monies in exchange for dropped charges is not bribery. We do not agree. Negative instructions, that is, those which will not support a conviction, ordinarily need not be given. *State v. Montague*, 10 Wn. App. 911, 521 P.2d 64 (1974); *State v. Van Auken*, 77 Wn.2d 136, 460 P.2d 277 (1969); *State v. Gunderson*, 74 Wn.2d 226, 444 P.2d 156 (1968). If the jury is clearly instructed as to the elements of the crime of bribery, it can easily deduce that an offer of restitution in exchange for dropped charges is not bribery. The court did not err in refusing to submit the defendant's proposed instruction to the jury.

Defendant's next argument is that the testimony of his former attorney, Allan Overland, should not have been admitted because of the attorney-client privilege. RCW 5.60.060(2). But the attorney-client privilege is not applicable when the advice sought is in furtherance of a crime or fraud. *Dike v. Dike*, 75 Wn.2d 1, 448 P.2d 490 (1968); *State*

v. *Richards*, 97 Wash. 587, 167 P. 47 (1917). It does not matter that the attorney was unaware of his client's purpose for seeking the advice. *See* C. McCormick, *Law of Evidence* § 95 (2d ed. 1972). If the defendant was indeed consulting the attorney about the use of a false affidavit which he planned to procure from Suzanne Satiacum, then it was in furtherance of a crime, and the attorney-client privilege was inapplicable.

█ The testimony of Overland concerning his representation of one of the burglars at a habitual criminal proceeding was also objected to by the defendant on the grounds that it was irrelevant and prejudicial. Although we do not see how it would be unduly prejudicial to the defendant to have the jury know that the State was attempting to secure the burglars' cooperation by the use of threats, we agree that the testimony does not tend to prove any of the facts at issue in this case, and hence was irrelevant and should have been excluded. *See State v. Carter*, 5 Wn. App. 802, 490 P.2d 1346 (1971); *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.*, 66 Wn.2d 469, 403 P.2d 351 (1965). But we do not believe it would unduly prejudice the jury to know that the State was attempting to secure the burglars' cooperation by the use of threats; hence, the error was harmless.

Defendant also objected to the use of a deputy prosecutor as an "expert" witness who was asked what effect a false affidavit would have on the prosecution of a case. Defendant contends that this was a hypothetical question based on conjecture, and thus inadmissible. *State v. Moore*, 7 Wn. App. 1, 499 P.2d 16 (1972); *State v. Tyler*, 77 Wn.2d 726, 466 P.2d 120 (1970). We find defendant's argument to be without merit because the assumed fact in this instance (*i.e.*, the contemplated existence of a false affidavit) was not speculative. As we indicated above, there was sufficient evidence from which the belief could be formed that the defendant was attempting to procure a false affidavit from Suzanne Satiacum.

■ Next, defendant contends that evidence which tended to link him to the burglary (*i.e.*, the walkie-talkie dropped by one of the burglars, and the fact that defendant was seen in the area at the time the burglary took place) was irrelevant and highly prejudicial. This argument is without merit because the evidence tends to show his motive for wanting to bribe Suzanne Satiacum; its relevancy outweighs its prejudicial effect. *State v. Bloomstrom*, 12 Wn. App. 416, 529 P.2d 1124 (1974); *State v. Boggs*, 80 Wn.2d 427, 495 P.2d 321 (1972); *State v. Goebel*, 36 Wn.2d 367, 218 P.2d 300 (1950).

Lastly, we will consider certain questions posed by the prosecution on cross-examination of defendant and another witness. Defendant contends that the questions were inflammatory and prejudicial because they were an attempt to suggest an ongoing "mob" activity by the defendant. Specifically, the prosecutor asked a witness whether the defendant used a certain cafe as "headquarters." The prosecutor then asked the defendant if a certain bailbondsman posts bonds for all the defendant's "boys" and whether the posting of bond is a matter of professional ethics when defendant's "boys" get caught. The prosecutor also remarked that the use of a certain defense witness at the burglars' trial was "reaching the bottom of the barrel."

We note preliminarily that in each instance defendant's objection to the question posed was sustained, and in all but one instance the jury was admonished to disregard the question. No answer was ever given to any of the questions. We agree that the questions were improper, and the prosecution's conduct in this respect was less than exemplary. However, in view of the fact that the defense objections were sustained and no answer was given to the questions, we believe that the prejudicial effect was slight and that the trial court correctly refused to grant a mistrial. *See State v. Jefferson*, 11 Wn. App. 566, 524 P.2d 248 (1974); *State v. Green*, 71 Wn.2d 372, 428 P.2d 540 (1967).

Defendant's remaining assignment of error concerns hearsay testimony relating to activities of Harold Rios which was admitted over defendant's objection.

We have reviewed the record and have found that such testimony pertained to the events of October 1972, which relate to count 3. Because we have decided to reverse count 3 for failure of proof, we do not deem it necessary to pass on this issue. Nor do we believe that the testimony, even if improperly admitted, was of such a nature as to affect the jury's consideration of count 2.

Count 2 is affirmed.

Count 3 is dismissed.

WILLIAMS and LANGSDORF, JJ. Pro Tem., concur.

Petition for rehearing denied October 20, 1975.

Review by Supreme Court pending June 10, 1976.