[No. 2914–3.  Division Three.  June 19, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. LARRY LEE MCKEOWN, *Appellant.*

*Richard L. Cease, Public Defender,* and *Don Westerman, Deputy,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Terence M. Ryan, Deputy,* for respondent.

ROE, J.—On August 23, 1977, Spokane Police Officer Jennings, working undercover, met Steve Burr at a local tavern. They discussed the sale of drugs: Jennings purchased 1 pound of marijuana with an agreement to meet Burr the following evening to negotiate a larger purchase. On August 24, Jennings and Burr met at the same tavern; Burr left and, on his return, stated that "he could do a hundred pounds of marijuana that night." During his absence, Burr had contacted Gerald Leighton about the bulk sale. In subsequently scouting out several taverns for one Gordon (a potential seller), Leighton met defendant/appellant McKeown, who said he possibly knew someone "that had some." After apparently making a phone call, McKeown told Leighton, "I believe I have got some for you."

Leighton and McKeown left the tavern in Leighton's car, and McKeown directed them to Richard Schierman's house. After a discussion about the sale in Schierman's living room, the marijuana was obtained. Arrangements were made with Burr to meet at Sambo's Restaurant on North Division in Spokane. Leighton subsequently testified that McKeown, who was riding with him and 6 pounds of the marijuana, stated, "Let's call it off," or words to that effect. However, the parties proceeded to the Taco Bell parking lot to complete the sale. McKeown got out of the car, stood by Schierman's van and watched the transfer of marijuana from that vehicle to the undercover police van. Detectives

from the Spokane Police Department arrived and began arresting those at the scene. McKeown started to walk across the parking lot towards the street when Officer Kennedy stopped him and asked whether McKeown knew any of the arrested persons or what was going on; McKeown answered "No." Kennedy then took McKeown back to the scene where he was placed under arrest.

McKeown was charged with delivery of a controlled substance as an accomplice of Leighton, Burr, and Schierman, and convicted by a jury.

At trial, Officer Kennedy testified to McKeown's parking lot denial. McKeown did not object. Even though no one had requested a CrR 3.5 pretrial hearing, McKeown contends that the trial court erred in allowing the introduction of his denial.

Ordinarily, failure to object to error at trial will preclude appellate review. If the error amounts to an invasion of constitutional rights, then it need not be raised at trial to secure review. *State v. Lampshire*, 74 Wn.2d 888, 447 P.2d 727 (1968).

■ CrR 3.5 is a mandatory rule: before introducing evidence of any statement of the defendant, the court *must* hold a hearing to determine if the statement was freely given and not the product of coercion. *State v. Joseph*, 10 Wn. App. 827, 520 P.2d 635 (1974). If the defendant acts knowingly and intentionally, he may waive this right. *State v. Myers*, 86 Wn.2d 419, 545 P.2d 538 (1976). It is doubtful from the record that McKeown made a knowing and intelligent waiver of the hearing, and waiver should not be presumed from his failure to request one. Further, there is no indication that McKeown was ever advised of his right to the hearing. Despite this, remand for a determination of voluntariness is unwarranted.

Although the rule is mandatory,

mere failure to hold a hearing does not make the statement inadmissible. The appellate court may examine the record and make its own determination of voluntariness.

*State v. Mustain,* 21 Wn. App. 39, 42–43, 584 P.2d 405 (1978); *State v. Vandiver,* 21 Wn. App. 269, 584 P.2d 978 (1978), and

> If a review of the record discloses that there can be no issue concerning voluntariness, rights have not been violated by failure to hold such a hearing.

*State v. Vandiver, supra* at 272, quoting *State v. Toliver,* 6 Wn. App. 531, 534, 494 P.2d 514 (1972).

▇ McKeown did not testify at trial. He does not maintain that the statement was made involuntarily, or that it was the product of duress, coercion, promises or inducements of any kind. An independent review of the record reveals that it was freely given under the test stated in *State v. Riley,* 17 Wn. App. 732, 735, 565 P.2d 105 (1977):

> To be admissible, a confession must be voluntary; and the test is whether the officer's behavior overcame the defendant's will to resist and brought about an admission that was not freely self–determined. The probable truth or falsity of the confession is not to be considered. Whether a confession is free and voluntary is not determined by whether the officer's conduct is shocking or the confession is cruelly extorted, but whether it was extracted by any sort of threats, violence, or direct or implied promises, however slight.

*See also State v. Lopez,* 67 Wn.2d 185, 406 P.2d 941 (1965). Therefore, there is no issue of voluntariness concerning his answer to Kennedy's question.

McKeown claims that the lack of a CrR 3.5 hearing prevented his effective cross–examination to determine if he was in custody and therefore entitled to *Miranda*[1] warnings at the time he made the statement. Under these facts, McKeown was not in custody when questioned by Officer Kennedy.

▇ The touchstone of admissibility is whether the defendant's statement was given in the course of custodial interrogation. *State v. Berkins,* 2 Wn. App. 910, 471 P.2d

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

131 (1970). Not every interrogation is custodial within the meaning of *Miranda.* Our courts have recognized the

> right to temporarily detain and interrogate before *Miranda* warnings are given under circumstances where because of the police presence the citizen is in fact temporarily not free to leave pending questioning.

*State v. Webster,* 20 Wn. App. 128, 135, 579 P.2d 985 (1978); *State v. Baker,* 68 Wn.2d 517, 413 P.2d 965 (1966).

In *State v. Sinclair,* 11 Wn. App. 523, 523 P.2d 1209 (1974), the defendant was riding in a truck which contained a stolen TV. Two officers followed the truck which stopped near defendant's residence. When defendant alit from the vehicle, both officers recognized him, placed him inside the squad car, and questioned him about his age, identity, and the TV. The police ran a "check," discovered an outstanding warrant for Sinclair's arrest on a traffic charge, and then arrested him both for the traffic charge and for grand larceny. The denial of Sinclair's motion to suppress was affirmed on appeal; this court relied on *State v. Gluck,* 83 Wn.2d 424, 426, 518 P.2d 703 (1974), for the proposition that

> where officers entertain a well–founded suspicion not amounting to probable cause, they may stop the suspected person, identify themselves and require the suspect to identify himself and explain his activity without being adjudged to have made a formal arrest.

and held that

> A police officer, in the discharge of his routine law enforcement duties prior to having probable cause to believe that a person he seeks to question has committed a crime for which an arrest may be made, may detain and question that suspect concerning his knowledge of the commission of a crime, including one in process of being committed or about to be committed, without the detention or questioning being considered an arrest and without the necessity of the police officer first giving the person questioned *Miranda* warnings.

*State v. Sinclair, supra* at 528.[2]

■■ McKeown assigns error to the trial court's denial of his motion to dismiss for insufficient evidence at the close of the State's case. A challenge to the sufficiency of the evidence requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the opposing party. *State v. Bishop,* 90 Wn.2d 185, 580 P.2d 259 (1978); *State v. Young,* 89 Wn.2d 613, 574 P.2d 1171 (1978). Further, a jury verdict can be overturned on review only when there is no substantial evidence to support it. *Lamborn v. Phillips Pac. Chem. Co.,* 89 Wn.2d 701, 575 P.2d 215 (1978). To determine whether the necessary quantum of proof exists, the appellate court need not be convinced of defendant's guilt beyond a reasonable doubt; it need only be satisfied that there was substantial evidence to support the State's case. *State v. Green,* 91 Wn.2d 431, 588 P.2d 1370 (1979).

■ Substantial evidence of accomplice liability must be predicated on more than mere physical presence and knowledge of the crime. *State v. Renneberg,* 83 Wn.2d 735, 522 P.2d 835 (1974). The accomplice must associate himself with the venture and "participates in it as something he wishes to˙ bring about, and by action to make it succeed", *State v. Boast,* 87 Wn.2d 447, 456, 553 P.2d 1322 (1976).

McKeown relies heavily on *State v. Gladstone,* 78 Wn.2d 306, 474 P.2d 274, 42 A.L.R.3d 1061 (1970), claiming that

---

[2]*See State v. Haverty,* 3 Wn. App. 495, 497, 475 P.2d 887 (1970): Statements of a later charged defendant made during the investigatory stage of a possible crime, and before the arresting officers have knowledge of sufficient facts to constitute probable cause to arrest the defendant, are admissible at trial even though the defendant has not been previously informed of his constitutional rights as described in *Miranda. Accord, State v. Webster, supra* (defendant placed in "traditional search position" against a squad car and questioned when stolen goods fell out of his shirt; held noncustodial questioning), and *State v. Hilliard,* 89 Wn.2d 430, 573 P.2d 22 (1977) (defendant, matching description supplied by assault victim, questioned concerning identity and reason for presence in area before *Miranda* warnings or arrest; held noncustodial interrogation and suppression motion properly denied).

there was insufficient nexus with Burr, Leighton, or Schierman to support his conviction. *Gladstone* is factually distinguishable: there, an undercover agent asked defendant where marijuana could be obtained. Gladstone named one Kent and drew a rough sketch of his location. The subsequent sale was made directly between Kent and the officer. There was no evidence that Gladstone had any agreement, arrangement, or association with Kent to aid or persuade him in the sale of the drug. The Supreme Court reversed Gladstone's conviction as an accomplice in the sale, finding his information to the officer no more than "a statement of opinion and possibly no more than campus gossip, rumor or innuendo."

> That vital element—a nexus between the accused and the party whom he is charged with aiding and abetting in the commission of a crime—is missing. The record contains no evidence whatever that Gladstone had any communication by word, gesture or sign, before or after he drew the map, from which it could be inferred that he counseled, encouraged, hired, commanded, induced or procured Kent to sell marijuana to Douglas Thompson as charged, or took any steps to further the commission of the crime charged.

*State v. Gladstone, supra* at 310–11.

Here, McKeown directly participated in the sale: unlike Gladstone, McKeown was present at the scene of the sale, after having personally contacted the seller (Schierman) and discussed the sale with Leighton and Schierman. This conduct amounts to more than "a statement of opinion" and establishes a sufficient nexus with the principals involved.

McKeown challenges instruction No. 4, which read as follows:

> Before you can find the defendant, LARRY LEE McKEOWN, guilty of Delivery of a Controlled Substance, you must find from the evidence in this case, beyond a reasonable doubt, all of the following elements:
> (1) That on or about August 24, 1977, Gerald L. Leighton, Steven P. Burr, and Richard D. Schierman, or

any one of them, did unlawfully deliver a controlled substance, marijuana.

(2) That the defendant, LARRY LEE McKEOWN, was an accomplice of either Gerald L. Leighton, *or* Steven P. Burr *or* Richard D. Schierman in the unlawful delivery of a controlled substance, marijuana, on or about August 24, 1977.

(3) That the delivery of a controlled substance took place in Spokane County, State of Washington.

(Italics ours.) The jury returned a general verdict; McKeown argues that since the evidence was insufficient to show he aided either Burr or Schierman, the court was required to instruct the jury that a unanimous vote was necessary for a conviction under one of the alternatives.

■ *State v. Metcalf,* 14 Wn. App. 232, 540 P.2d 459 (1975), defeats McKeown's argument. There, the court held that

> Where, under a penal statute, a single offense can be committed in different ways or by different means and the several ways or means charged in a single count are not repugnant to each other, a conviction may rest on proof that the crime was committed by any one of the means charged. . . .
>
> . . . The alternative methods of committing a crime are repugnant to one another only if proof of one will disprove the other. . . .
>
> We are mindful, however, that no instruction was supplied advising the jury that a unanimous vote was necessary for a conviction under either alternative. But such an omission does not amount to reversible error when there is sufficient evidence to support a conviction under either alternative.

(Citations omitted.) *State v. Metcalf, supra* at 238–39, quoting *State v. Dixon,* 78 Wn.2d 796, 802, 479 P.2d 931 (1971).

As discussed above, there was sufficient evidence in the record to support McKeown's conviction as an accomplice of either Burr, Leighton or Schierman.

Finally, McKeown argues that the trial court erred in failing to give defendant's proposed instruction on the intent required for accomplice liability.

The trial court gave instruction No. 5, which follows the statutory language of RCW 9A.08.020:

A person is an accomplice in the commission of a crime, if, *with knowledge* that it will promote or facilitate the commission of the crime, he or she either:

(1) Solicits, commands, encourages, or requests another person to commit the crime; or

(2) Aids or agrees to aid another person in planning or committing the crime.

The word "aid" means all assistance whether given by words, acts, encouragement, support or presence. A person who is present at the scene and is ready to assist by his or her presence is aiding in the commission of the crime.

(Italics ours.)

Defendant proposed the following instruction:

It must be shown that the accomplice shared in the criminal intent of the principal and there must be a community of unlawful purpose at the time the act was committed.

Relying on *State v. Boast, supra,* McKeown maintains that an accomplice is guilty only if he shares in the criminal intent of the principal, and that the instructions as given omitted the intent requirement.

■■ To determine the requisite intent for accomplice liability, it must first be determined what intent is required for liability as a principal. The inquiry begins with *State v. Boyer,* 91 Wn.2d 342, 588 P.2d 1151 (1979), *aff'g* 19 Wn. App. 338, 576 P.2d 902 (1978). There, the Supreme Court reconciled several lower court decisions[3] that produced conflicting interpretations of the intent requirement for delivery of a controlled substance, RCW 69.50.401(a). Holding

---

[3]In *State v. Smith,* 17 Wn. App. 231, 562 P.2d 659 (1977), Division One of the Court of Appeals held that RCW 69.50.401(a) on its face requires intent. In *State v. Boyer,* 19 Wn. App. 338, 576 P.2d 902 (1978), Division Two of the Court of Appeals disagreed with *Smith* and apparently held that no mental state was required.

*State v. Tuss,* 21 Wn. App. 80, 584 P.2d 421 (1978), a later case from Division Two, attempted to harmonize the two opinions by interpreting *Boyer*: although

that intent is essential to the crime, the court formulated the mens rea element in terms of "guilty knowledge":

> Accordingly, absent express legislative language to the contrary, we find in the context of this statute, its history and language, that *guilty knowledge* is intrinsic to the definition of the crime itself. *Guilty knowledge* must be proven beyond a reasonable doubt in conviction of this defendant under the statute.

(Italics ours.) *State v. Boyer, supra* at 344.

In *State v. Gladstone, supra* at 312–13, the court quoted from *Johnson v. United States,* 195 F.2d 673 (8th Cir. 1952), in establishing the prerequisites to accomplice liability:

> Generally speaking, to find one guilty as a principal on the ground that he was an aider and abetter, it must be proven that he shared in the criminal intent of the principal and there must be a community of unlawful purpose at the time the act is committed. As the term "aiding and abetting" implies, it assumes some participation in the criminal act in furtherance of the common design, either before or at the time the criminal act is committed.

In the same case, the court cited *State v. Hinkley,* 52 Wn.2d 415, 325 P.2d 889 (1958), to amplify the meaning of "abet":

> Although the word "aid" does not imply guilty knowledge or felonious intent, the word "abet" includes *knowledge* of the wrongful purpose of the perpetrator, as well as counsel and encouragement in the crime.

*State v. Gladstone, supra* at 314.

"Intent" and "knowledge" were therefore used interchangeably to define the mental state required for liability as an aider and abetter. *See State v. J–R Distribs., Inc.,* 82 Wn.2d 584, 512 P.2d 1049 (1973).

---

*Boyer* disagreed with the statutory interpretation of *Smith,* the court did recognize that general criminal intent is a required element of a crime which is malum in se, and that delivery of a controlled substance is such a crime.

The mens rea of aiding and abetting is guilty knowledge. *United States v. McDaniel*, 545 F.2d 642 (9th Cir. 1976). In instruction No. 5, the trial court charged the jury that an accomplice must act *with knowledge* that he is promoting or facilitating the commission of a crime. The issue of intent was therefore before the jury.

Further, this instruction follows the statutory language of RCW 9A.08.020, the accomplice statute. Where the law governing a case is expressed in a statute, the court should use the language of the statute in instructing the jury. *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978); *State v. McKinney*, 19 Wn. App. 23, 573 P.2d 820 (1978). A trial court has wide discretion to determine the wording of instructions, and is well within that discretion by instructing in statutory language. We find no abuse of discretion.

Finding no error, the judgment is affirmed.

GREEN, C.J., and McINTURFF, J., concur.