**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: THE ESTATE OF MATILDA
COVINGTON, Deceased Colville
Indian 101-A1273 IP SA 73 N 01,

JAMES EDMONDS, Colville Tribal
Legal Services,
                    *Petitioner-Appellee,*

            v.

WILLIAM E. HAMMETT, U.S.
Administrative Law Judge, Office
of Hearings and Appeals,
Department of the Interior;
MICHAEL J. STANCAMPIANO, Indian
Probate Judge, Office of Hearings
and Appeals, U.S. Department of
the Interior,
                    *Respondents-Appellants.*

No. 04-35449

D.C. No.
CV-03-00197-FVS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Fred L. Van Sickle, Chief Judge, Presiding

Argued and Submitted
March 8, 2006—Seattle, Washington

Filed May 25, 2006

Before: Diarmuid F. O'Scannlain, Barry G. Silverman, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge O'Scannlain;
Dissent by Judge Gould

5811

## COUNSEL

Katherine J. Barton, Environmental and Natural Resources Division, United States Department of Justice, Washington, D.C., argued the cause for the appellants. Thomas L. Sansonetti and William H. Beatty, Assistant United States Attorneys, and John A. Bryson, Department of Justice, were on the briefs.

David. J. Groesbeck, Spokane, Washington, argued the cause for the appellee. James R. Bellis, Nespelem, Washington, was on the briefs.

## OPINION

O'SCANNLAIN, Circuit Judge:

Rarely does a probate matter find its way into federal court. Here we are presented with a will contest involving a member of an Indian tribe in a Department of the Interior probate proceeding where we must decide whether state or federal law of evidence applies.

I

Matilda Covington, a Colville Indian,[1] died on July 13, 1999. On July 9, 1999, shortly before her death, Covington executed a will leaving all her Indian trust allotments to her great-grandson, Brandon Austin Francis, a minor.[2] Covington's children predeceased her and she left no property to her three living grandchildren. The will listed one of Covington's grandchildren, Jolene Francis—the mother of Brandon Austin Francis—as the decedent's personal representative for pur-

---

[1]In this opinion, we use the term "Indian." Though the term "Native American" is frequently preferred, "the statutes and opinions we examine use the term Indian, which was the appropriate word not so long ago." *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 154 F.3d 1117, 1118 n.1 (9th Cir. 1998).

[2]A trust allotment is "a parcel of land owned by the United States in trust for an Indian." *Cohen's Handbook of Federal Indian Law* § 16.03[1], p. 1039 (Nell Jessup Newton et al. eds., 2005) ("*Federal Indian Law*"). *See also United States ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 906 n.2 (9th Cir. 1994). Generally, "upon the death of an Indian allotment owner, the decedent's interest . . . passes to his or her Indian heirs or devisees." *Federal Indian Law* § 16.03[4][c], p. 1052. However, "with secretarial approval, Indian allotment owners may relinquish allotted land to their close relatives in trust, so long as the recipient is an Indian qualified to own restricted property." *Id.* Thus, the Department of the Interior determines the disposition of trust properties when the Indian dies. 25 U.S.C. §§ 372, 373. *See also* William C. Canby, Jr., *American Indian Law* 50 (4th ed. 2004) (describing Indian trust lands and Interior's role).

poses of administering the estate. Jolene Francis is also listed as a contingent beneficiary for the trust property. Staff attorneys from the Colville Tribal Legal Services ("CTLS") assisted Covington in drafting her will.

Two of Covington's grandchildren—Debra Palmer and Robert Francis—contested her will alleging that she lacked testamentary capacity and was subjected to undue influence. The Department of the Interior's ("Interior") Office of Hearings and Appeals ("OHA") hears will contests involving Indian trust allotments. *See supra* n.2. At the third hearing, testimony by the will scrivener and witnesses cast doubt on Covington's state of mind. Further, two of Covington's relatives testified that she was unable to recognize or to speak with them in the days before she executed the will.

Testimony at the probate hearings revealed that Covington had prepared a handwritten worksheet to aid her attorney in drafting the new will. Debra Palmer and Robert Francis sought a subpoena for all materials related to the preparation of the will, presumably hoping that they would shed light on Covington's mental state. OHA Administrative Law Judge ("ALJ") William Hammett oversaw the probate of the will and issued a subpoena duces tecum to James Edmonds—director of CTLS—compelling him to produce copies of all documents relating to the preparation of the will and to appear at a supplemental hearing. Edmonds refused to turn over the documents, claiming that they were privileged attorney-client communications, confidential, and protected work product. Jolene Francis, the personal representative of Covington's estate, refused to waive any privilege.

The ALJ rejected Edmonds's claim of privilege and directed him to produce the relevant materials. Shortly thereafter, Edmonds filed a motion to quash the subpoena in the Eastern District of Washington.[3] The district court granted the

---

[3]43 C.F.R. § 4.230(b) designates the district court as the proper forum for the enforcement of a subpoena issued by an OHA ALJ.

motion to quash on the grounds that attorney-client privilege protected the materials.

Interior timely appeals.

## II

Interior contends that under the regulations, the ALJ may admit evidence that does not comport with state evidentiary rules.[4]

## A

As a threshold matter, we must address Interior's assertion that its interpretation of its own regulations is due deference. Interior is indeed correct that an agency's interpretation of its own regulations is generally entitled to deference. *See, e.g.*, *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *League of Wilderness Defenders/Blue Mts. Biodiversity Project v. Forsgren*, 309 F.3d 1181, 1183 (9th Cir. 2002) ("An agency's interpretation of its own regulations is entitled to deference unless it is plainly erroneous or inconsistent with the regulation[.]"). Though Interior may be due deference, we are reminded that "Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands." *Investment Company Institute v. Camp*, 401 U.S. 617, 628 (1971). In *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 212 (1988), however, the Supreme Court refused to extend *Chevron* deference when "the agency itself has articulated no position on the question." The Court explained that "[d]eference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate." *Id.* Despite these admoni-

---

[4]A district court's decision to quash an administrative subpoena is reviewed de novo. *NLRB v. Bakersfield Californian*, 128 F.3d 1339, 1341 (9th Cir. 1997); *Reich v. Montana Sulphur & Chem. Co.*, 32 F.3d 440, 442 (9th Cir. 1994).

tions, *Auer* explained that an agency's litigating position may be entitled to deference if it reflects the agency's "fair and considered judgment on the matter in question" and is not a " 'post hoc rationalization.' " 519 U.S. at 462 (quoting *Bowen*, 488 U.S. at 212). If Interior's position meets these requirements, and is not plainly erroneous or inconsistent with the regulations, we will defer to it.[5]

B

Interior has published regulations regarding Indian trust probate proceedings pursuant to 5 U.S.C. § 301, which authorizes the head of any executive department to prescribe regulations to conduct the business of the department.

[1] The relevant OHA regulation on form and admissibility of evidence states:

> (a)    Interested parties may offer at a formal hearing such relevant evidence as they deem appropriate under the generally accepted rules of evidence of the State in which the evidence is taken, subject to the administrative law judge's or Indian probate judge's

---

[5]CTLS argues that Interior's interpretations are not entitled to deference because the Interior Department functions as a trustee for Indians. *See Cobell v. Norton*, 240 F.3d 1081, 1099 (D.C. Cir. 2001) (noting that "the Secretary cannot escape his role as trustee by donning the mantle of administrator to claim that courts must defer to his expertise and delegated authority" (internal quotations omitted)). However, even if a duty to deal fairly with Indians applies, it is not clear in who benefits. CTLS argues that the duty favors its interpretation, because it protects the Indian-testator's confidential communications. Interior, however, contends that it needs broad authority to admit evidence in order to dispose of trust lands effectively and in accordance with the Indian-testator's wishes. Thus, any duty to deal fairly would just as easily favor Interior's interpretation as CTLS's. With both parties claiming that their approach benefits Indians— and both parties having plausible claims to such—we cannot say that a duty to deal fairly would cut one way or another.

supervision as to the extent and manner of presentation of such evidence.

(b)   The administrative law judge or Indian probate judge may admit letters or copies thereof, affidavits, or other evidence not ordinarily admissible under the generally accepted rules of evidence. The weight to be attached to evidence presented in any particular form is within the discretion of the administrative law judge or Indian probate judge, taking into consideration all the circumstances of the particular case.

(c)   Stipulations of fact and stipulations of testimony that would be given by witnesses were such witnesses present, agreed upon by the interested parties, may be used as evidence at the hearing.

(d)   The administrative law judge or Indian probate judge may in any case require evidence in addition to that offered by the interested parties.

43 C.F.R. § 4.232.

Another OHA regulation limits production of privileged materials:

(a)   An interested party may make a written demand to produce documents for inspection and copying or photographing. This demand:

. . . (4)   May demand any documents, papers, records, letters, photographs, or other tangible things that are:

(i)   Relevant to the issues;

(ii)   In the other party's or custodian's possession, custody, or control; and

(iii)    *Not privileged. . . .*

(c)    On his or her own motion, the administrative law judge or Indian probate judge may issue an order to any interested party or custodian of records for the production of material or information that is relevant to the issues and *not privileged. . . .*

43 C.F.R. § 4.220 (emphasis added).

While under § 4.220, the ALJ lacks authority to subpoena privileged materials, the regulation does not specify whether federal or state privilege law applies. The parties agree that if federal evidentiary law applies to these proceedings, § 4.220 would not bar the admission of Covington's notes.[6] Obviously, the first question is whether § 4.232 adopts federal or state evidentiary rules. Second, we must determine whether the relevant source has incorporated the testamentary exception to the attorney-client privilege.

C

Does § 4.232 adopt state or federal law? CTLS contends that subsection (a) applies the evidentiary rules of the state in which the evidence is introduced. Interior, on the other hand, contends that subsection (a) only determines what evidence

---

[6]If the testamentary exception to the attorney-client privilege applies, the materials would be *both* admissible and not privileged. *See*, *e.g.*, *Glover v. Patten*, 165 U.S. 394, 406 (1897) (noting, in a suit between devisees under a will, that "statements made by the deceased to counsel respecting the execution of the will, or other similar documents, *are not privileged*" (emphasis added)); 8 *Wigmore on Evidence* § 2292, p. 555 (J. McNaughten ed., 1961) (noting, with respect to Uniform Rule of Evidence 26, the privilege "*shall not extend* . . . to a communication relevant to an issue between" parties claiming through a deceased client (emphasis added)). Therefore, if the testamentary exception to the attorney-client privilege applies, the limitation in 43 C.F.R. § 4.220 would not bar the subpoena of the documents.

the parties may offer as a matter of right, and that subsections (b) and (d) allow the ALJ to admit evidence on the basis of federal common law.

1

**[2]** Subsection (a) is the only provision of either regulation that mentions state or federal law, noting that the parties "may offer . . . relevant evidence as they deem appropriate under the generally accepted rules of evidence of the State in which the evidence is taken." 43 C.F.R. § 4.232(a). The plain text of the regulation supports CTLS's interpretation: the evidence the parties may offer is determined by state law, not federal law. As to substantive evidentiary issues surrounding proffered evidence—such as whether Covington's communications with her attorney are privileged (or, conversely whether they may be offered as evidence)—subsection (a) identifies state law as the relevant authority.

2

But the question remains where subsection (a) fits as part of the overall regulatory scheme. *Campesinos Unidos v. U.S. Dep't of Labor*, 803 F.2d 1063, 1069 (9th Cir. 1986) ("Our task is to interpret the regulation as a whole, in light of the overall statutory and regulatory scheme, and not to give force to one phrase in isolation."). CTLS's interpretation also fits with the structure of the whole regulation. If subsection (a) adopts state law as the relevant evidentiary law for substantive questions, then subsection (b)—as we discuss further below—frees the ALJ from the strictures of "generally accepted rules of evidence" in order to allow evidence of different forms and to retain a relaxed procedure. Though we agree with Interior that subsection (a) does not necessarily set a limit as to what evidence may come in—subsections (b) and (d) may expand this universe—subsection (a) clearly sets the baseline.

**[3]** The text of § 4.232 is plain; we need not defer to the agency's interpretation of subsection (a). Indeed, Interior's interpretation is not even supported by its own Interior Board of Indian Appeals' ("IBIA") case law. Specifically, *Estate of Charles Hall, Sr.*, 8 IBIA 53, 62 (Mar. 28, 1980), concluded that § 4.232 "adopts the rules of evidence of the state where the hearings are held." Similarly, in *Estate of Elizabeth Frank Green*, 3 IBIA 110, 119 (Sept. 19, 1974), the IBIA concluded that § 4.232(a) provides the rules for "submitting and receiving evidence in Indian probate proceedings." We think it clear from these cases that the IBIA decisional law construes subsection (a), and § 4.232 generally, as having selected state evidentiary law as the relevant law for the proceedings.

D

Interior contends that subsections (b) and (d) give the ALJ broad authority to admit evidence that would not be allowed under state rules, but would be allowed under federal rules. CTLS contends that the ALJ remains bound by state law except under the narrow exceptions provided for in the other subsections.

1

**[4]** Subsection (b) states that the ALJ "may admit letters or copies thereof, affidavits, or other evidence not ordinarily admissible under the generally accepted rules of evidence. . . ." § 4.232(b). Interior argues that subsection (b) allows the ALJ to admit evidence in accordance with *federal* privilege law, meaning that § 4.220 would no longer prohibit the admission of the materials.

**[5]** The term "other evidence not ordinarily admissible" is a general term following specific examples, so we must interpret it with reference to the preceding list according to the *ejusdem generis* canon of construction. *See*, *e.g.*, *Circuit City Stores v. Adams*, 532 U.S. 105, 114-115 (2001) (" '[W]here

general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.' " (quoting 2A N. Singer, *Sutherland on Statutes and Statutory Construction* § 47.17 (1991)). Under this reading, "or other evidence . . ." must refer to other evidence similar to "letters or copies thereof" and "affidavits." Given the preceding terms, the catch-all provision is limited to form and related issues of presentation (e.g., whether the evidence is properly authenticated, whether it is presented as hearsay, etc.), rather than questions of substance (e.g., whether privilege extends).[7]

The second sentence of subsection (b), which Interior does not explain, reinforces this conclusion: "The weight to be attached to evidence presented *in any particular form* is within the discretion of the administrative law judge" (emphasis added). That is, the ALJ may admit evidence in a variety of forms, but because such evidence may be suspect, the ALJ is free to discount its weight. Were Interior correct that subsection (b) broadly authorizes the ALJ to admit any evidence he so chooses, the reference to "form" in the second sentence would be inappropriate.

[6] Interior's interpretation of subsection (b)—that it allows the ALJ broadly to "admit evidence not ordinarily admissible" —excises the prefatory examples and ignores the second sentence of the subsection. We decline to adopt such interpretation. Rather, we read subsection (b) as a whole; as such, it allows the ALJ to ignore technical evidentiary requirements and to admit evidence in various forms or types, but the ALJ

---

[7]CTLS also argues that if subsection (b) is read any more broadly—for example, so that it allows the ALJ to admit any evidence—then it would swallow subsection (a). However, this ignores another distinction between the two provisions. Subsection (a) deals with evidence the parties may offer, while subsection (b) deals with evidence that the ALJ may accept. Thus, even if subsection (b) is read broadly, subsection (a) still has a different, logical function.

may not adopt different standards for substantive evidentiary questions, such as whether communications are privileged as a matter of law.

Such interpretation also fits with the prior IBIA case law. For example, hearsay evidence may not be admissible under state evidentiary rules, but the ALJ can still admit such evidence under subsection (b). *See*, *e.g.*, *Estate of Harold Humpy*, 5 IBIA 132, 136 (June 18, 1976) (approving the ALJ's use of § 4.232(b) to admit hearsay testimony that would not be admissible under state law); *Estate of Alexander Joseph Williams*, 6 IBIA 132, 135 (Aug. 2, 1977) (approving the use of testimony by affidavit where a witness's health prevented a live appearance, even though state evidentiary law would not allow testimony in this form); *Estate of Guo-La a/k/a Thomas Jones*, 7 IBIA 181, 186 (Aug. 28, 1979) (hearsay rule not applicable to administrative proceedings). For example, in *Estate of Alexander Joseph Williams*, a witness was too ill to travel and to present testimony. The IBIA concluded that it was acceptable for the ALJ to consider the witness's testimony by affidavit, though applicable state rules would not have allowed the testimony to be delivered in that form. 6 IBIA at 135. As the IBIA explained, "43 CFR 4.232 adopts the rules of evidence of the state where the hearings are held, but *permits a relaxed procedure*." *Estate of Charles Hall*, 8 IBIA at 62 (emphasis added). *See also Estate of Larry Michael Oskolkoff*, 37 IBIA 291, 299 (June 24, 2002) (noting that subsection (b) gives the ALJ "some discretion in determining what kinds of evidence will be considered"). These cases go to the form of evidence, and none would allow the ALJ to admit evidence whose substance—rather than its manner of presentation—would be prohibited by state law.

In support of its interpretation of subsection (b), Interior argues that "[i]t is a well established principle that federal evidentiary rules govern proceedings in federal court where federal law provides the rule of decision." Federal Rule of Evidence 501, however, states that federal common law will

apply unless "otherwise . . . provided." Fed. R. Evid. 501. Here the regulations specifically adopt state evidentiary rules. Further, given that the IBIA has previously interpreted § 4.232 as adopting state evidentiary rules, the litigating position proffered by Interior now—advocating that federal common law applies—is not entitled to any deference.

**[7]** In sum, subsection (b) expresses the relatively uncontroversial proposition that administrative proceedings need not cleave to strict state evidentiary rules. *See*, *e.g.*, *Opp Cotton Mills v. Adm'r of Wage and Hour Div. of Dep't of Labor*, 312 U.S. 126, 155 (1941) (noting that technical evidentiary rules, applicable in jury trials, "do not apply to proceedings before federal administrative agencies in the absence of a statutory requirement that such rules are to be observed"). This interpretation also fits within the regulatory scheme: subsection (b) gives the ALJ somewhat broader authority to admit evidence, but does not jettison the selection of state substantive law evinced in subsection (a). Subsection (b) does not go further to adopt federal common law or give the ALJ broad authority. Further, while there are many IBIA decisions relying on subsection (b) to admit evidence whose form or presentation does not comport with state law, Interior cannot point to any IBIA decision that extends to the ALJ authority to circumvent evidentiary rules on questions of substance.

2

Interior also notes that "[t]he Department has consistently held that the execution and interpretation of a will disposing of trust or restricted property are questions of Federal, not state, law." *Estate of Florence Night Chase*, 38 IBIA 188, 192 (Nov. 5, 2002) (citations omitted); *see also Estate of Elizabeth Frank Green*, 3 IBIA 110, 120 (Sept. 19, 1974) ("The Department has long adhered to the rule that state laws have no application in Indian trust probate proceedings involving wills."). However, this line of cases stands only for the proposition that federal law supplies the standards for determining

valid execution and proper interpretation of wills. These cases do not support Interior's position that federal evidentiary law applies to questions of privilege as well. Indeed, the same cases which note the role of federal law also explain that state evidentiary law applies. *See*, *e.g.*, *Green*, 3 IBIA at 119 (noting that § 4.232(a) provides for "submitting and receiving evidence in Indian probate proceedings"). Even if the IBIA decisions supported Interior's position, Interior's proffered interpretation is not supported by the text of the regulation, which does not distinguish between proceedings involving wills and other proceedings. Such interpretation would not be entitled to deference. *Auer*, 519 U.S. at 461.

3

Finally, Interior argues that subsection (d) gives the ALJ broad authority to "require evidence in addition to that offered by the parties." Interior contends that subsection (d) allows the ALJ to admit any evidence admissible under federal law.

**[8]** First, we note that nowhere does subsection (d) explicitly adopt federal law. In contrast, subsection (a) explicitly adopts state law as the baseline for admissibility. Further, were we to adopt Interior's interpretation of subsection (d), that provision would swallow subsection (b). That is, if subsection (d) broadly authorizes the ALJ to "require" any evidence admissible under federal law, then *a priori* the ALJ can admit evidence that is otherwise inadmissible under state law. Such result should be avoided: "When interpreting a regulation, we must avoid an interpretation that would render another regulation superfluous." *United States v. Alisal Water Corp.*, 427 F.3d 597, 606 (9th Cir. 2005) (citation omitted). Subsection (b) carefully allows the ALJ authority to compel materials of a different form or presentation, but does not allow the abrogation of substantive state evidentiary law. Interior's reading of subsection (d) undermines this balance by reading subsection (d) in isolation: The ALJ "may in any case require evidence in addition to that offered by the interested

parties." However, this reading impermissibly "give[s] force to one phrase in isolation," rather than considering the entire statutory scheme. *Campesinos Unidos*, 803 F.2d at 1069.

[9] The better reading of subsection (d), we conclude, is that it grants the ALJ authority to "require" additional otherwise admissible evidence beyond that presented to him. As Interior has argued, the ALJ sits in OHA proceedings as a delegate of the Secretary. In this role—as compared to that of a typical trial judge—the ALJ can compel the testimony of additional witnesses and require additional documentation beyond that proffered by the parties. But this does not mean that the ALJ can circumvent the scheme set out in subsections (a) and (b). Again, no IBIA case law supports Interior's interpretation, which, in any event, is inconsistent with the regulatory text because it would render subsection (b) vestigial.

## III

If the regulation requires the ALJ to follow state evidentiary laws, Interior argues that Washington state law *would* recognize the testamentary exception to the attorney-client privilege.[8] In the alternative, Interior argues that the question is appropriate for certification to the Washington Supreme Court. CTLS argues that the testamentary exception does not exist under Washington law.

[10] While some states have statutorily defined the exceptions to the attorney-client privilege,[9] the Washington Supreme Court has repeatedly identified and endorsed judge-

---

[8]We review de novo the district court's interpretation of state law. *Salve Regina College v. Russell*, 499 U.S. 225 (1991); *General Motors Corp. v. Doupnik*, 1 F.3d 862, 864 (9th Cir. 1993).

[9]*See*, *e.g.*, Cal. Evid. Code § 957 ("There is no privilege under this article as to a communication relevant to an issue between parties all of whom claim through a deceased client."); Hawaii Rule of Evidence 503(c)(3) (same).

made exceptions to the privilege. *See*, *e.g.*, *Pappas v. Holloway*, 787 P.2d 30, 34 (Wash. 1990) (advice not privileged during litigation between attorney and client); *State v. Metcalf*, 540 P.2d 459, 461 (Wash. 1975) (advice sought in furtherance of crime or fraud not privileged); *see also* Robert H. Aronson, *The Law of Evidence in Washington* § 501.03[2][h][i]-[vi] (2004) (describing six recognized exceptions to the attorney-client privilege in Washington).

**[11]** The parties agree that no Washington case has (yet) adopted the testamentary exception, though it has been recognized in other courts for over 150 years. Edward J. Imwinkelried, *The New Wigmore: A Treatise on Evidence* § 6.13.2 (2002) (noting that English courts first recognized the testamentary exception in *Russell v. Jackson*, 68 Eng. Rep. 558 (V.C. 1851)). The parties point to two cases, *Points v. Nier*, 157 P. 44 (Wash. 1916), and *Cummings v. Sherman*, 132 P.2d 998 (Wash. 1943), which both discuss the attorney-client privilege after the death of a client. While these cases are material to determining whether the Washington Supreme Court *would* adopt a testamentary exception, that is *not* the inquiry required under § 4.232(a). Rather, the regulations only require us to determine whether the testamentary exception to the attorney-client privilege is "generally accepted." The parties have not provided a single Washington case or statute recognizing the testamentary exception; we therefore conclude that the testamentary exception is not "generally accepted" in Washington, whatever its merits or the likelihood that it would be adopted in the future.[10]

---

[10]Certification pursuant to Wash. Rev. Code § 2.60.030 would also be inappropriate. Indeed, certification would implicitly concede that there is no "generally accepted" law. Once we have made that conclusion our analysis is at an end, and the evidence is inadmissible. Furthermore, the issue is what the ALJ *should have done* when faced with this evidentiary issue. An ALJ in an OHA proceeding lacks the authority to certify questions under Washington law. *See* Wash. Rev. Code § 2.60.010. Thus, the ALJ was bound by the then-extant generally-accepted state law.

**[12]** In contrast, it is clear that under Washington law, the attorney-client privilege is "generally accepted." *See* Wash. Rev. Code § 5.60.060(2)(a). Pursuant to the standard rules of attorney-client privilege, resort to Covington's attorney's notes is not "appropriate under the generally accepted rules of evidence of" Washington. Because no "generally accepted" testamentary exception applies, Covington's notes are inadmissible.

AFFIRMED.

---

GOULD, Circuit Judge, dissenting:

Although I agree with the majority's framework for interpreting the Department of Interior's governing regulation in Part II, I disagree with the majority's analysis in Part III, which for me is the crux of the case. In Part III, the majority holds that because no Washington case or statute has adopted the testamentary exception to the attorney-client privilege, the exception is not a "generally accepted" rule of evidence as required by 43 C.F.R. § 4.232(a). The majority then concludes that the general attorney-client privilege, set forth in Wash. Rev. Code § 5.60.060(2)(a), is a "generally accepted" rule of evidence that prevents disclosure of the subpoenaed documents.

The discovery of these documents is not merely technical, nor is an error on the scope of attorney-client privilege here likely harmless. It goes to justice between the parties, as the quashed discovery might have shed light on whether a testator who in old age cut her grandchildren out of her will and left everything to a single great-grandchild may have been of unsound mind or unduly influenced in the revision of her will. On the other hand, if the discovery shows nothing of this, then it benignly clears the cloud of this litigation that otherwise may mar the great-grandchild's inheritance.

Probably since before the onset of recorded history, there have been occasions where the aged and mentally infirm have been unduly influenced in disposition of their assets before they died. The federal common law and the law of states that have addressed this issue by statute make a testamentary exception to the otherwise applicable attorney-client privilege, and thus permit discovery about a testator's communications with her attorney in the act of revising a will. The Supreme Court of the State of Washington has previously adopted exceptions to the statutory attorney-client privilege, and I believe that if it reached the privilege issue presented by this case, the Washington State Supreme Court would probably recognize a testamentary exception as a limit on the scope of attorney-client privilege.

Given this setting, and the demands of justice, two courses are permissible in this case, and I regret neither is taken by the majority. First, addressing the needs of the case before us, I would certify to the Washington State Supreme Court for its binding decision the question whether attorney-client privilege under Washington law bars the discovery that was sought in this case, or if conversely there is a testamentary exception to the attorney-client privilege that would permit the discovery to proceed.[1] The majority dismisses certification in its footnote 10, noting the federal regulation's command only to follow "generally accepted" state law, within the meaning of 43 C.F.R. § 4.232(a), because the majority does not see how we can certify that "local law" is not "clearly determined" within the meaning of Wash. Rev. Code § 2.60.020, as we interpret whether any "generally accepted" state privilege law bars the discovery. The majority errs in its view of this certification statute. If the Washington State Supreme Court does not wish to accept a certified question, it will pass. Yet the

---

[1]The Washington State Supreme Court's clarifying its law on this issue, on which Washington law is not now clearly determined, would provide benefits for the bench and bar in the State of Washington in other cases as well.

Washington State Supreme Court, with its keen eye for discerning justice, may wish to address directly the issue whether a testamentary exception permits the requested discovery that may impact an estate and persons within the State of Washington. It is not impermissible to certify that local law has not been clearly determined, as we interpret whether the ALJ had to apply a rule of attorney-client privilege to preclude issuance of the subpoena to the testator's Washington lawyer. To the contrary, it is ill-advised to apply Washington law without such an exception before permitting the state's highest court to step in and decide the matter for us.[2]

Second, there is a way to assess this case without certification. It is to recognize that one cannot sensibly conclude that the law of attorney-client privilege is clearly established as applied to a testamentary setting when the Washington State Supreme Court has never ruled, one way or the other, on whether there is a testamentary exception to the privilege. The application of law requires consideration of both rule and exception. The latter is genuinely at issue when state law is undecided on whether there is a testamentary exception. A general rule of law of privilege cannot correctly be said to be generally accepted in the testamentary setting. This is perhaps a juristic philosophical issue on which reasonable judges may differ, but considering the real world consequences for those who challenge Covington's will and the purported beneficiary, I do not accept the majority's conclusion that the Washington attorney-client privilege is generally accepted state law as applied to this case in its testamentary setting.

Absent certification and acceptance of the issue, I would consider whether there is a "generally accepted" rule of evidence under Washington law that governs the discovery of

---

[2]The majority in its footnote 10 urges that the ALJ in the OHA proceeding could not certify questions under Washington law; but that fact does not detract from our ability to certify the key question for the Washington State Supreme Court's decision.

communications between an allegedly incompetent testator and her attorney. Because the state statute on attorney-client privilege does not address this situation, *see* Wash. Rev. Code § 5.60.060(2)(a), and because the Washington State legislature and the Washington State Supreme Court have not spoken on the precise matter, we should reasonably conclude that there is no applicable "generally accepted" state rule of evidence, and thus the Department of Interior's ALJ was free to apply the federal common law recognizing an exception in this setting to the attorney-client privilege.

On these grounds, I respectfully dissent.